**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CYNTHIA A. DELGADO,** | : | |
| **Petitioner** | : | **No. 1:24-cv-00518** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **SUPERINTENDENT WENDY** | : | |
| **NICHOLAS, et al.,** | : | |
| **Respondents** | : | |

# MEMORANDUM

Currently before the Court is a petition for a writ of habeas corpus under 28 U.S.C. § 2254 filed by pro se Petitioner Cynthia A. Delgado ("Delgado"). For the reasons stated below, the Court will deny the petition in part and dismiss it in part, decline to issue a certificate of appealability, and direct the Clerk of Cour to close this case.

## I. BACKGROUND

### A. State Court Proceedings

On June 19, 2020, Delgado was sentenced to an aggregate period of a minimum of seven years to a maximum of 14 years of state confinement after a jury sitting in the Court of Common Pleas of Monroe County ("CCP") found her guilty of (1) kidnapping to facilitate a felony (18 Pa. C.S. § 2901(a)(2)), (2) criminal attempt to commit statutory sexual assault (18 Pa. C.S. § 901(a)), (3) intimidating a witness/victim – withholding testimony (18 Pa. C.S. § 4952(a)(3)), (4) unlawful contact with a minor – sexual offenses (18 Pa. C.S. § 6318(a)(1)), (5) interfering with custody of children (18 Pa. C.S. § 2904(a)), (6) endangering welfare of children – parent/guardian/other commits offense (18 Pa. C.S. § 4304(a)(1)), (7) criminal use of a communication facility (18 Pa. C.S. § 7512(a)), (8) luring a child into a motor vehicle (18 Pa. C.S. § 2910(a)), and (9) five counts of criminal conspiracy (18 Pa. C.S. § 903). (Doc. No. 1 at

1); see also Commonwealth v. Delgado, No. 2485 EDA 2022, 2023 WL 2706704, at *1 (Pa. Super. Ct. Mar. 30, 2023); Docket, Commonwealth v. Delgado, No. CP-45-CR-0002381-2018 (Monroe Cnty. Ct. Com. Pl. filed Oct. 26, 2018) ("CCP Dkt.").[1] These convictions related to Delgado and her boyfriend, Confesol Paduani ("Paduani"), "arrang[ing] online to take a 15-year-old boy from Pennsylvania to South Carolina," driving the boy there, and then attempting to engage in sexual activity with him. See Delgado, 2023 WL 2706704, at *1.

Delgado did not appeal from the CCP's sentence; instead, she timely filed a pro se petition for post-conviction relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541–46 ("PCRA") on July 20, 2020, in which she raised numerous ineffective-assistance-of-counsel claims against her trial counsel. See (Doc. Nos. 1 at 2, 3; 18-5 at 3–38); Delgado, 2023 WL 2706704, at *1; CCP Dkt.[2] The PCRA court appointed counsel to represent Delgado, and PCRA counsel filed an amended PCRA petition along with a supporting brief on December 2, 2020. See (Doc. Nos. 18-6; 18-7); Delgado, 2023 WL 2706704, at *1; CCP Dkt. Delgado raised the following claims in her amended petition:

> [1.] Trial counsel failed to properly inform himself, investigate, obtain records, and seek an expert witness or witnesses to properly prepare and mount a defense given [Delgado's] longstanding mental illness and psychiatric disorders including: Major Depressive Disorder; Post Traumatic Stress

[1] The Court takes judicial notice of the docket for Delgado's underlying criminal case, including any proceedings before the Magisterial District Judge, both of which are available on the Unified Judicial System of Pennsylvania Web Portal (https://ujsportal.pacourts.us/CaseSearch). See Orabi v. Att'y Gen. of the U.S., 738 F.3d 535, 537 n.1 (3rd Cir. 2014) (stating that the court "may take judicial notice of the contents of another [c]ourt's docket"); Wilson v. McVey, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket).

[2] Delgado's pro se PCRA petition consists of a joint petition filed by her and Paduani, and most of the claims raised are phrased as pertaining to only Paduani, so it is difficult to ascertain which claims also pertained to Delgado. See, e.g., (Doc. No. 18-5 at 29 ("Defendant Confesol Paduani[] states that bias and overwhelming prejudice during closing arguments were made about the Defendants [b]y the Prosecutor . . . .")).

Disorder[;] and Borderline Personality Disorder, all of which were relevant to issues in this case pre-trial, at trial, and further issues at sentencing of [Delgado]. (Mental illness dating from 2009 including two psychiatric hospitalizations, perhaps stemming from extended foster care and childhood sexual abuse from age nine to sixteen is reflected in the Pre-Sentence Investigation Report, but nothing otherwise is docketed or evident from the court record or trial counsel's file other than a fleeting reference to competency on the docket.)

[2.] Trial counsel failed to file a pretrial motion to suppress statements arising from a custodial interrogation during which [Delgado] repeatedly requested an attorney multiple times and the constitutional right to counsel had attached. (Nothing docketed or evident from the court record.)

[3.] Trial counsel failed to file a pretrial motion seeking to sever her case from her co-defendant's case (or at a minimum undertake certain key proceedings out of [Paduani]'s presence) where trial counsel was aware or should have been aware of the overwhelming psychological power and influence of [Paduani] which overcame [Delgado's] ability to make reasoned decisions in <u>her</u> <u>own</u> defense. (belatedly raised by trial counsel, NT 8/15/19, p. 16, "She's completely influenced by him.") – (Nothing otherwise docketed or evident from the court record.)

[4.] Trial counsel failed to file or make a pretrial or trial motion, in trial presentation[,] or even in argument to the jury, or otherwise request in the court's jury instructions or the jury verdict slip to eliminate unfair, prejudicial, and legally unwarranted multiplication of conspiracy offenses for what was a single course of conduct consisting of multiple offenses. (Nothing docketed or evident from the court record.)

[5.] Trial counsel failed to file a Notice of Appeal to the Superior Court[.] (A moot point since no substantive issues had been properly preserved.)

. . .

[6.] The trial court failed to undertake or provide for certain key proceedings in [Delgado's] case out of [Paduani's] presence where the trial court was made aware by [Delgado's] counsel of the overwhelming psychological power and influence of [Paduani] over [Delgado's] ability to make reasoned decisions in <u>her</u> <u>own</u> defense, thereby destroying [Delgado's] opportunity for a reasonable guilty plea. (NT 8/5/19, p. 16[.])

> [7.] The trial court failed to eliminate in the criminal information, its instructions to the jury, or the jury verdict slip, unfair, prejudicial, and legally unwarranted multiplication of conspiracy offenses for what was a single course of conduct to commit multiple offenses. (No evidence of record.)

See (Doc. No. 18-7 at 2–4).

The Commonwealth filed an answer to Delgado's amended PCRA petition on March 15, 2021. See (Doc. No. 18-8); CCP Dkt. On September 7, 2021, Delgado filed a motion in which she sought funds to hire an expert for "psychiatric and psychological assistance." See (Doc. No. 18-9); CCP Dkt. The CCP granted Delgado's motion on November 23, 2021. See (Doc. No. 18-10); CCP Dkt.

The CCP held an evidentiary hearing on Delgado's amended PCRA petition on April 29, 2022. See (Doc. No. 18-11); CCP Dkt. On July 11, 2022, Delgado filed a brief in support of her amended PCRA petition. See (Doc. No. 18-12); CCP Dkt. On August 22, 2022, the PCRA court denied Delgado's amended petition via an Opinion and Order. See (Doc. Nos. 1 at 3; 18-13); CCP Dkt.

Delgado timely appealed from the denial of her amended PCRA petition to the Pennsylvania Superior Court. See Delgado, 2023 WL 2706704, at *1; CCP Dkt. On October 14, 2022, Delgado filed her Pennsylvania Rule of Appellate Procedure ("Pa. R. App. P.") 1925(b) statement of the matters she was complaining about on appeal in which she identified two appellate issues:

> 1. . . . [A]lthough [the trial court] addressed the "mechanical" sentencing aspect of the unwarranted multiplication of conspiracy charges, failed to address the unwarranted multiplication of felony convictions, and the prejudicial effect upon the jury at trial and during deliberation by unwarranted multiplication of felony charges against [Delgado].
>
> 2. The [t]rial [c]ourt, as an abuse of discretion and in violation of the US Constitution's 5th and 6th Amendments, erred in not providing sufficient resources for a qualified psychiatric expert who could conduct an appropriate examination of

> [Delgado] and assist in evaluation, preparation, and presentation of the defense to assist PCRA counsel under the circumstances of this case.

See (Doc. No. 18-14 at 1); CCP Dkt.[3] The CCP issued a Pa. R. App. P. 1925(a) statement and supplemental statement addressing Delgado's two appellate claims on November 4, 2022, and November 21, 2022, respectively. See (Doc. Nos. 18-15; 18-16); CCP Dkt.

On March 30, 2023, the Superior Court affirmed the PCRA court's decision via an unpublished Memorandum Opinion. See Delgado, 2023 WL 2706704, at *1, 3. The Superior Court also pointed out that the CCP imposed concurrent sentences of incarceration for each of Delgado's five conspiracy convictions, and it vacated four of those concurrent sentences after concluding that the CCP imposed an illegal sentence insofar as the CCP should have sentenced Delgado "for only one conspiracy." See id. at *2.

Delgado did not seek further review by filing a petition for allowance of appeal with the Pennsylvania Supreme Court. See (Doc. No. 1 at 4). She did, however, file a pro se second PCRA petition more than a year later, on July 31, 2024, in which she raised the following claims:

> [1.] Trial counsel failed to object to alleged criminal acts that occurred outside the Commonwealth of Pennsylvania and it's [sic] legal jurisdiction and it's [sic] venue in a timely manner to avoid prejudice in this case.

---

[3] Rule 1925(b) allows a trial court seeking "clarification of [an appellant's] errors complained of on appeal" to "enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal." See Pa. R. App. P. 1925(b). The appellant's statement must, inter alia, "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." See Pa. R. App. P. 1925(b)(4)(ii). Any "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of [Rule 1925(b)(4)] are waived." See Pa. R. App. P. 1925(b)(4)(vii); see also Commonwealth v. Tyack, 128 A.3d 254, 260 (Pa. Super. Ct. 2015) ("If Appellant wants to preserve a claim that the evidence was insufficient, then the [Rule] 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. . . . [If a Rule] 1925(b) statement . . . does not specify the allegedly unproven elements[,] . . . the sufficiency issue is waived [on appeal]." (citation omitted)).

[2.] Trial counsel failed to investigate, subpoena, and ignored admissable [sic] evidence such as [m]edical [r]ecord's [sic] that were available and known to him that would have proven that [Delgado] did not have any type of sexually transmitted disease, at any time.

[3.] Trial counsel failed to request . . . a sexually transmitted disease test, pursuant to known "Discord" text messages to defend against allegations that the alleged victim contracted a sexually transmitted disease by [Delgado].

[4.] Trial counsel failed to contact, subpoena, or investigate [c]haracter [w]itnesses and failed to present evidence of [Delgado's] good character. Names, addresses, and phone numbers were provided to counsel.

[5.] Trial counsel failed to contact, subpoena, or investigate [an e]xculpatory [w]itness[] that had direct contact with the alleged victim. Name, address, and phone number was [sic] provided to counsel.

[6.] Trial counsel failed to investigate, present, and ignored [sic] evidence known to counsel of [Delgado's] long history of mental illness from abuse, found in the medical record's [sic] from the Department of Social Security and it's [sic] [m]edical [d]ivision, that would have supported [Delgado's] actions and course of conduct in this case.

[7.] Trial counsel failed to retain a [c]linical and [f]orensic [p]sychologist to perform a full psychological evaluation and sexual risk assessment, due to [Delgado's] past and long history of mental illness from abuse as a child to her young adulthood.

[8.] Trial counsel failed to object to prejudicial and inappropriate remarks made by the Commonwealth during trial. Upon further review of the trial transcripts[, Delgado] took notice that the inappropriate remarks, claims, and false statements during trial and in closing arguments were intentionally removed from the transcripts by the Commonwealth.

[9.] Trial counsel failed to object to prejudicial and inappropriate remarks made by the Commonwealth to the jury after the jury was selected.

[10.] Trial counsel failed to object to "Discord" text messages that were known to counsel to have been intentionally deleted by the alleged victim and was [sic] not fully investigated or subpoenaed by the Pennsylvania State Troopers nor by counsel for criminal purpose or activity with a minor.

[11.] Trial counsel failed to retain an expert in the field of interrigations [sic] and interviews in police tactics and abuse of interrigation [sic] upon [Delgado's <u>Miranda</u>] right's [sic].

[12.] Trial counsel failed to object to text messages that were withheld by the Commonwealth that was [sic] never disclosed to the defense.

[13.] Trial counsel failed to file an [o]mnibus pretrial motion that would include a motion for the [sic] [b]ill of [p]articulars, a motion for Brady or Randall hearing or Mapp hearing.

[14.] Trial counsel failed to file or make any pretrial or trial motions in presentation and/or arguments to the jury or otherwise request in the jury instructions to eliminate unfair, prejudicial and legally unwarranted multiplication of conspiracy offenses for what was a single course of conduct consisting of multiple offenses.

[15.] Trial counsel failed to correct known incorrect dates that was [sic] known prior to trial that were made in error on [Delgado's] criminal docket and court records that would change the computation of time and its remedies pursuant to [Pennsylvania Rule of Criminal Procedure] 600(A)(C)(D) [sic], in favor of [Delgado].

[16.] Trial counsel failed to file a motion to dismiss all charges pursuant to [Pennsylvania Rule of Criminal Procedure] 600(D)(1) Remedies.

[17.] Trial counsel failed to withdraw due to prejudice and conflict of counsel. Trial counsel failed to file a motion to request the withdrawal of the Assistant District Attorney, Julieane Edna Fry, and Attorney James Thomas Fuller, Jr.[,] due to prejudice and conflict of interest in this case.

[18. T]trial counsel and [the] trial court knowingly allowed testimony and non-supporting evidence of an alleged criminal act of "having sex with a minor child" that allegedly occurred outside the Commonwealth of Pennsylvania and it's [sic] legal jurisdiction and venue that cause [sic] prejudice with the jury in this case as there was no investigation. It was not a "prior bad act" as there was no conviction or determination of any improper conduct by any agency having jurisdiction. Allowing the claim was not relevant under the [sic] Pennsylvania Rule[] of Evidence 404(B) [sic] and was more prejudicial than probative to [Delgado]. Further, [the] trial court failed to eliminate the criminal information and it's [sic] instructions to the jury of unfair prejudicial [sic] and legally unwarranted multiplication of conspiracy offenses for what was a single course of conduct consisting of multiple offenses.

See (Doc. No. 18-18 at 2–5); CCP Dkt.

On August 9, 2024, the CCP issued a notice of its intent to dismiss Delgado's second PCRA petition without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907. See CCP Dkt. Less than a week later, on August 14, 2024, the Commonwealth filed an answer in opposition to Delgado's second PCRA petition. See (Doc. No. 18-19); CCP Dkt. On September 6, 2024, the CCP issued an Order which, inter alia, dismissed Delgado's second PCRA petition. See (Doc. No. 18-20); CCP Dkt. Delgado did not file an appeal from this decision. See CCP Dkt.

**B. Federal Habeas Proceedings**

On March 20, 2024, which was prior to Delgado filing her second PCRA petition, Delgado filed the instant Section 2254 petition along with an application for leave to proceed in forma pauperis ("IFP Application") and a prisoner trust fund account statement. (Doc. Nos. 1–3.)[4] Delgado raises the following claims in her petition:

> [1.] Trial [c]ounsel failed to object to alleged criminal acts that occurred outside the Commonwealth of Pennsylvania, its legal jurisdiction[,] and its venue in a timely manner to avoid prejudice in this case.
>
> [2.] Trial counsel failed to investigate and subpoena. They ignored admissable [sic] evidence of [m]edical [r]ecords that were available.
>
> [3.] Trial counsel failed to request an STD test, pursuant to known text messages to defend against allegations that the victim contracted an STD by [sic] [Delgado].
>
> [4.] Trial counsel failed to contact, subpoena, or investigate [c]haracter [w]itnesses and failed to present evidence of [Delgado's] good character, even though the names, addresses, and phone numbers were provided.

[4] The federal "prisoner mailbox rule" provides that a pro se prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk." See Houston v. Lack, 487 U.S. 266, 276 (1988). Here, Delgado declares that she placed her petition in the prison's mail system on March 20, 2024. (Doc. No. 1 at 14). As such, the Court uses March 20, 2024, as the petition's filing date even though the Clerk of Court did not docket it until March 26, 2024.

[5.] Trial counsel failed to contact, subpoena, or investigate exculpatory [sic] witness that had direct contact with the alleged victim, [even] though the name, address, and phone number were provided.

[6.] Trial counsel failed to investigate, present, and ignored evidence known to counsel of [Delgado's] long history of mental illness from abuse, found in the medical record's [sic] from the Medical Division of the Department of Social Security.

[7.] Trial counsel failed to retain a [c]linical and [f]orensic [p]sychologist to perform a full psychological evaluation and sexual risk assessment, due to [Delgado's] past and long history of mental illness and abuse as a child into her young adulthood.

[8.] Trial counsel failed to object to prejudicial and inappropriate remarks made by the Commonwealth during trial.

[9.] Trial counsel failed to object to prejudicial and inappropriate remarks made by the Commonwealth to the jury after the jury was selected.

[10.] Trial counsel failed to object to "Discord" text messages that was [sic] known to counsel and was [sic] intentionally deleted by the alleged victim and was [sic] not fully investigated or subpoenaed by the Pennsylvania Stat [sic] Troopers or counsel for criminal purpose or activity with a minor.

[11.] Trial counsel failed to retain an expert in the field of interrogations and interviews in police tactics and the abuse of interrogation process. [Delgado was] not properly advised of [her] Miranda] Rights [sic].

[12.] Trial counsel failed to object to text messages that was [sic] withheld by the Commonwealth and never disclosed to the defense.

[13.] Trial counsel failed to file an [o]mnibus [p]retrial [m]otion, [b]ill of [p]articulars, Brady, Mapp[,] or Randull [sic] on [Delgado's] behalf.

[14.] Trial counsel failed to file, make any pretrial or trial motions in presentation and/or arguments to the jury or otherwise request in jury instruction [sic] to slip [sic] to eliminate unfair, prejudicial, and legally unwarranted multiplication of conspiracy offenses for what was a single course of conduct consisting of multiple offenses.

[15.] Trial counsel failed to correct known incorrect dates that were, prior to trial, made in error on [Delgado's] criminal docket and court records that would have changed the computation of time and its remedies pursuant to [Pennsylvania Rule of Criminal Procedure] 600(A), (C) and (D) in [her] favor.

> [16.] Trial counsel failed to file a motion to dismiss all charges pursuant to [Pennsylvania Rule of Criminal Procedure] 600(D)(1) Remedies.
>
> [17.] Trial counsel failed to withdraw due to prejudice and conflict of counsel and failed to file a motion to request the withdrawal of the Assistant District Attorney . . . and [Paduani's trial counsel a]lso due to prejudice and conflict of interest in this case.

See (Doc. No. 1 at 5, 6, 8, 9, 16, 19, 22, 25, 29, 32, 35, 39, 42, 45, 49, 55, 58); CCP Dkt. For relief, Delgado seeks: (1) an evidentiary hearing where Paduani is present; (2) a determination that trial counsel and appointed PCRA counsel were ineffective; (3) the dismissal of all charges with prejudice pursuant to Pennsylvania Rule of Criminal Procedure 600(A)(2)(a), (C)(1), and (D)(1) or, in the alternative, a hearing on whether the Commonwealth violated Rule 600; (4) a new trial; and (5) an order appointing her "new counsel . . ., conflict counsel to that of Monroe County and its offices." See (Doc. No. 1 at 14).

When submitting her IFP Application, Delgado's account statement was not certified in accordance with the in forma pauperis statute, see 28 U.S.C. § 1915(a)(2) ("A prisoner seeking to bring a civil action . . . without prepayment of fees or security therefor . . . shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . ., obtained from the appropriate official of each prison at which the prisoner is or was confined."); as such, an Administrative Order issued requiring the superintendent at Delgado's place of incarceration to submit her certified account statement to the Clerk of Court. (Doc. No. 4.) Delgado's certified account statement was docketed on April 9, 2024. (Doc. No. 6.)

On April 19, 2024, an Administrative Order issued which, inter alia, granted Delgado's in forma pauperis application, provided her with information about the limitations on her right to file another habeas petition in the future if the Court considered her petition, and directed her to

submit a notice in which she elected whether to stand on her current petition or withdraw it so she could file an all-inclusive petition. (Doc. No. 8.) Delgado returned a notice of election indicating that she sought to have the Court rule on her petition as filed on May 2, 2024. (Doc. No. 9.)

The Court issued an Order on August 16, 2024, which, inter alia, directed Respondents to file an answer to Delgado's Section 2254 habeas petition. (Doc. No. 10.) Prior to Respondents filing their answer, Delgado filed a motion to stay and abey the case while she litigated her second PCRA petition in the CCP on August 29, 2024. (Doc. No. 11.) Respondents then filed an answer to Delgado's habeas petition on September 3, 2024, in which they argued that (1) her Section 2254 petition was untimely and (2) she failed to fully exhaust her state court remedies insofar as the CCP had yet to decide her second PCRA petition. See (Doc. No. 12 at 4–5). On February 13, 2025, the Court entered an Order deeming withdrawn Delgado's motion to stay and abey due to her failure to file a supporting brief in accordance with the Local Rules. (Doc. No. 13); see also M.D. Pa. L.R. 7.5 ("Within fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion. . . . If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn.").

On November 18, 2025, the Court issued an Order which, inter alia, (1) rejected Respondents' contention in their answer that Delgado untimely filed her Section 2254 petition, (2) noted that Respondents had not addressed the substance of Delgado's claims as well as whether any of them are exhausted/procedurally defaulted for reasons beyond the pendency of her second PCRA petition, (3) directed Respondents to file a supplement to their answer in which they substantively addressed Delgado's claims, and (4) provided Delgado with a period of 21 days from the date of Respondents' supplemental answer to file a reply brief. See (Doc. No. 14

at 1–7). After requesting and receiving an extension of time (Doc. Nos. 15, 16), Respondents timely filed their supplemental answer and relevant portions of the state court record on February 6, 2026 (Doc. Nos. 17, 18).

Delgado never filed a reply brief in further support of her petition. However, on June 29, 2026, she filed a notice of change of address indicating that she is no longer incarcerated in state prison. (Doc. No. 19.) In addition, the Commonwealth of Pennsylvania Department of Corrections Supervised Individuals Locator (https://inmatelocator.cor.pa.gov/#/) shows that Delgado was released on parole on May 20, 2026. Delgado's petition is ripe for disposition.

## II. LEGAL STANDARDS

### A. Section 2254 Habeas Petitions

A petition for writ of habeas corpus is the exclusive federal remedy for a state prisoner challenging the "very fact or duration" of their confinement and seeking "immediate release or a speedier release from that imprisonment." See Preiser v. Rodriguez, 411 U.S. 475, 498–99 (1973); Leamer v. Fauver, 288 F.3d 532, 542–44 (3d Cir. 2002). A district court is authorized to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that [they are] in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2254(a). Claimed violations of state law, standing alone, will not entitle a petitioner to relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Furthermore, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas

corpus must have exhausted the remedies available to them in the courts of the state. See 28 U.S.C. § 2254(b)(1)(A).

These same principles that limit habeas relief to errors of a constitutional dimension also require federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts during state criminal proceedings. There are two critical components to this deference mandated by Section 2254.

First, with respect to legal rulings by state courts, habeas relief is unavailable to a petitioner for any claim that has been adjudicated on its merits in state court unless it can be shown that the state court decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; see id. § 2254(d)(1); or (2) was "based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," see id. § 2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. See Rice v. Collins, 546 U.S. 333, 338–39 (2006) (concluding that state court's decision on petitioner's peremptory challenge based on Batson v. Kentucky, 476 U.S. 79 (1986), "was not an unreasonable determination of the facts in light of the evidence presented to the state court"); see also Warren v. Kyler, 422 F.3d 132, 139–40 (3d Cir. 2005) (determining that state court's decision to apply presumption in the applicable version of 42 Pa. C.S. § 9714 was not "an objectively unreasonable application of clearly established federal law"); Gattis v. Snyder, 278 F.3d 222, 231 (3d Cir. 2002) ("We agree with the District Court that the state court decisions are not contrary to clearly established federal law.").

In addition, the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was

erroneous. See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made during criminal proceedings. See, e.g., Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam) (explaining that under the applicable standard, "we have not the slightest hesitation in saying that the trial court's conclusion as to [the defendant's] competency was fairly supported by the record" (citation and internal quotation marks omitted)). This principle applies to factual findings made both by the state trial court and state appellate courts. See Rolan v. Vaughn, 445 F.3d 671, 679 (3d Cir. 2006) ("Generally, federal courts defer to state appellate court determinations of fact."). Thus, this Court may not reassess credibility determinations made by the state courts and must give equal deference to both the explicit and implicit factual findings made by the state courts. See Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir. 2000) ("[W]e must provide the same presumption of correctness required by § 2254(e)(1) to the state courts' implicit factual findings as we provide to express findings of the state courts." (citing Campbell v. Vaughn, 209 F.3d 280, 285–86 (3d Cir. 2000))). Applying this standard of review, federal courts may only grant habeas relief whenever "[o]ur reading of the PCRA court records convinces us that the Superior Court made an unreasonable finding of fact." See Rolan, 445 F.3d at 681.

**B. Ineffective Assistance of Counsel Claims**

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the [a]ssistance of [c]ounsel for his

defence." See U.S. Const. amend VI. However, "[t]hat a person who happens to be a lawyer is present at trial alongside the accused . . . is not enough to satisfy [this] constitutional command." See Strickland v. Washington, 466 U.S. 668, 685 (1984). Rather, "[t]he Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." See id. For that reason, "'the right to counsel is the right to the effective assistance of counsel.'" See id. at 686 (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).

To show that a petitioner was denied the effective assistance of counsel, they must satisfy a two (2)-prong standard, as set forth by the Supreme Court in Strickland. Under the first prong of the Strickland standard, a petitioner must show that "counsel's performance was deficient." See id. at 687. This requires a showing that "counsel's representation fell below an objective standard of reasonableness." See id. at 687–88; Williams v. Taylor, 529 U.S. 362, 390–91 (2000). Indeed, "[c]ounsel's performance is deficient only "when counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." See McKernan v. Superintendent Smithfield SCI, 849 F.3d 557, 564 (3d Cir. 2017) (quoting McBride v. Superintendent, SCI Houtzdale, 687 F.3d 92, 102 (3d Cir. 2012)). This requires the "reasonably effective assistance" of counsel:

> [Courts] consult no checklist, as no catalog can "satisfactorily take [into] account . . . the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688–89[.] That is why [the courts'] review of counsel's performance is "highly deferential," United States v. McCoy, 410 F.3d 124, 135 (3d Cir. 2005), for "it is all too easy for a court" to find a certain act or omission unreasonable after the defense ultimately proves unsuccessful, Strickland, 466 U.S. at 689[;] see also Rolan[, 445 F.3d at 681–82] ("[C]ounsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better.").

See Rogers v. Superintendent Greene SCI, 80 F.4th 458, 462 (3d Cir. 2023).

Under the second prong of the Strickland standard, a petitioner must show that counsel's "deficient performance prejudiced [his] defense." See 466 U.S. at 687. "Simply 'show[ing] that the errors had some conceivable effect on the outcome of the proceeding' is not enough, as '[v]irtually every act or omission of counsel would meet that test.'" Rogers, 80 F.4th at 464 (quoting Strickland, 466 U.S. at 693). This prong requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." See id. Thus, the petitioner must show that there is "a reasonable probability that," if not for counsel's errors, "the result of the proceeding would have been different." See id. at 694. A reasonable probability, in turn, "is a probability sufficient to undermine confidence in the outcome." See id. This "requires a substantial, not just conceivable, likelihood of a different result." See Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted).

A habeas petitioner must satisfy both prongs and a failure to do so is fatal to his Strickland claims. See 466 U.S. at 687 (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable"); Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987). Additionally, a court is permitted to choose which prong of the Strickland standard to apply first, and a court may reject an ineffective assistance claim on the ground that the petitioner was not prejudiced without ever addressing whether counsel's performance was deficient. See 466 U.S. at 697. In other words:

> Although [the Supreme Court has] discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an

> ineffectiveness claim on the ground of lack of sufficient prejudice, which [the Supreme Court expects] will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

See id.

For purposes of AEDPA, see 28 U.S.C. § 2254(d)(1), the "clearly established Federal law" as to an ineffective assistance of counsel claim is the two (2)-prong standard established by Strickland. See Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010) (citation omitted); Cullen, 563 U.S. at 189 (explaining that "[t]here is no dispute that the clearly established federal law" for an ineffective assistance of counsel claim under the Sixth Amendment is Strickland). Although the Pennsylvania Supreme Court uses slightly different language than that of the United States Supreme Court to address ineffective assistance of counsel claims, Pennsylvania's standard is consistent with the federal standard set forth in Strickland. See Werts v. Vaughn, 228 F.3d 178, 202–04 (3d Cir. 2000) (holding that a Pennsylvania state court applying Pennsylvania's ineffective assistance of counsel standard did not contradict Strickland); Jacobs v. Horn, 395 F.3d 92, 106 n.9 (3d Cir. 2005) (citing Werts, 228 F.3d at 204, and noting that the Third Circuit has "previously ruled that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland")).

Finally, it bears emphasis that "[s]urmounting Strickland's high bar is never an easy task," see Padilla v. Kentucky, 559 U.S. 356, 371 (2010), and "[e]stablishing that a state court's application of Strickland was unreasonable under [Section] 2254(d) is all the more difficult." See Harrington v. Richter, 562 U.S. 86, 105 (2011). Accordingly, when the state court has decided an ineffective assistance of counsel claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'"

See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). Further, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." See id. (citation omitted). This has been referred to by the Supreme Court as "'doubly deferential.'" See, e.g., Cullen, 563 U.S. at 190 (explaining that "[w]e take a highly deferential look at counsel's performance . . . through the deferential lens of Section 2254(d)" (citation, internal citation, and internal quotation marks omitted)).[5] The Court must apply a high level of deference both to counsel's actions and to the state court's determination that counsel's actions were constitutionally adequate. See Dunn v. Reeves, 594 U.S. 731, 739 (2021); Knowles, 556 U.S. at 123 (citing Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003)). Thus, the Court may only grant habeas corpus relief if "every 'fairminded jurist' would agree that every reasonable lawyer would have made a different decision." See Dunn, 594 U.S. at 739–40 (quoting Harrington, 562 U.S. at 101).

### C. Exhaustion of State Remedies and Procedural Default

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus, unless the petitioner has first satisfied the statutory exhaustion requirement providing that habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." See 28 U.S.C. § 2254(b)(1)(A); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). This exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal

---

[5] Where a petitioner's claimed violations of federal law were not adjudicated on the merits by the state courts, AEDPA's deferential standard, see 28 U.S.C. § 2254(d), does not apply, and the district court reviews the petitioner's claims de novo. See Cone v. Bell, 556 U.S. 449, 472 (2009) (citations omitted); Han Tak Lee v. Glunt, 667 F.3d 397, 403 (3d Cir. 2012).

constitutional challenges to state convictions. See Werts, 228 F.3d at 192; Picard v. Connor, 404 U.S. 270, 275–76 (1971).

Section 2254 codifies this principle by requiring that a habeas petitioner exhaust the remedies available in the courts of the State, see 28 U.S.C. § 2254(b)(1)(A), meaning a state prisoner must "fairly present" their claims in "one complete round of the state's established appellate review process," before bringing them in federal court. See O'Sullivan, 526 U.S. at 845 (stating that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process"). This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. See Picard, 404 U.S. at 278 ("[T]he substance of a federal habeas corpus claim must first be presented to the state courts."); see also McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual and legal substance" of claim to state courts). Mere reliance of state and federal claims on the same constitutional provision does not render the two claims substantially equivalent. See Brown v. Cuyler, 669 F.2d 155 (3d Cir. 1982); Zicarelli v. Gray, 543 F.2d 466 (3d Cir. 1976). Instead, both the legal theory and the facts on which a federal claim rests must have been presented to the state courts. See Picard, 404 U.S. at 277; Brown, 669 F.2d at 158–61.

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" McCandless, 172 F.3d at 260 (quoting 28 U.S.C. § 2254(b)). Nevertheless, Section

2254 habeas petitioners "are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse [their] default." See id. (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991). To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded their efforts to comply with the state's procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if the petitioner can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," see Murray, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim to prevent a fundamental miscarriage of justice. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. See Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. See Hubbard v. Pinchak, 378 F.3d 333, 339–40 (3d Cir. 2004).

In general, attorney errors in collateral proceedings do not establish cause to excuse a procedural default unless the petitioner can meet the narrow exception to this general rule set forth in Martinez v. Ryan, 566 U.S. 1 (2010). Under Martinez, "[i]nadequate assistance of

counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," see id. at 9, if the petitioner can satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," see id. at 14; and that the petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding. See id. at 17; see also Glenn v. Wynder, 743 F.3d 402, 410 (3d Cir. 2014).

A petitioner demonstrates that the underlying ineffective assistance of trial counsel claim has "some" merit by "show[ing] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." See Workman v. Superintendent Albion SCI, 915 F.3d 928, 937–38 (3d Cir. 2019); see also Martinez, 566 U.S. at 13–14. A petitioner demonstrates that post-conviction counsel's ineffectiveness caused the procedural default by showing that post-conviction counsel's performance was deficient under the first prong of the standard established in Strickland. See Preston v. Superintendent Graterford SCI, 902 F.3d 365, 376 (3d Cir. 2018); see also Workman, 915 F.3d at 937–38.

## III. DISCUSSION

### A. Whether Delgado's Petition is Moot Due to Her Release on Parole

As indicated above, Delgado was released on parole on May 20, 2026. Therefore, the Court will first address whether Delgado's habeas petition is moot due to her release on parole.

"Article III of the [United States] Constitution limits federal 'judicial Power' to the adjudication of 'Cases' or 'Controversies.'" Abreu v. Superintendent Smithfield SCI, 971 F.3d 403, 406 (3d Cir. 2020) (quoting Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009)). "For a case or controversy to exist, a petitioner, throughout each stage of the

litigation, 'must have suffered, or be threatened with, an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision.'" Id. (quoting DeFoy v. McCullough, 393 F.3d 439, 442 (3d Cir. 2005)). Consequently, "a habeas corpus petition generally becomes moot when a prisoner is released from custody because the petitioner has received the relief sought." See id. (citing DeFoy, 393 F.3d at 441); see also Hamilton v. Bromley, 862 F.3d 329, 335 (3d Cir. 2017) (explaining that mootness is "a doctrine that 'ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit,' and which is 'concerned with the court's ability to grant effective relief'" (quoting Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist., 832 F.3d 469, 476 (3d Cir. 2016) and County of Morris v. Nationalist Movement, 273 F.3d 527, 533 (3d Cir. 2001))).

Nevertheless, a petitioner who has been released from custody "may obtain judicial review of a [habeas] petition by showing that [they] continue[] to suffer from secondary or collateral consequences of [their] conviction." See Abreu, 971 F.3d at 406 (citations omitted). Generally speaking, "collateral consequences will be presumed when the [petitioner] is attacking [their] conviction while still serving the sentence imposed for that conviction [and] . . . where the[y are] attacking that portion of [their] sentence that is still being served." See id. (citing United States v. Jackson, 523 F.3d 234, 242 (3d Cir. 2008)). Once a petitioner has been released, however, the Court does "not presume that a conviction carries collateral consequences." See Abreu, 971 F.3d at 406 (citing Burkey v. Marberry, 556 F.3d 142, 148 (3d Cir. 2009)). Instead, the Court "must 'address[] the issue of collateral consequences in terms of the "likelihood" that a favorable decision would redress the injury or wrong[,]'" and "[i]t is not enough if 'collateral consequences proffered by the petitioner' amount to 'a possibility rather than a certainty or even a probability.'" See id. (quoting Burkey, 556 F.3d at 148).

Here, Delgado's release on parole does not moot her Section 2254 petition because:

> "[I]n the criminal context, an individual who is on parole or released on his or her own recognizance is deemed in custody because of the significant restrictions imposed on his or her freedom." Kumarasamy v. Att'y Gen. of U.S., 453 F.3d 169, 172 (3d Cir. 2006). A petitioner's release on parole may render his habeas claims moot where release on parole is the only relief sought. See, e.g., Razzoli v. FCI Allenwood, 200 F. App'x 166, 169 (3d Cir. 2006).

See Wilson v. Delbalso, No. 19-cv-05205, 2021 WL 3777124, at *2 n.4 (E.D. Pa. June 29, 2021), report and recommendation adopted, 2021 WL 3771871 (E.D. Pa. Aug. 24, 2021); see also Harris v. Lagana, No. 13-cv-05063, 2015 WL 4413085, at *2 (D.N.J. July 16, 2015) (explaining that the "custody" requirement for habeas corpus relief "is defined not only as physical confinement, but includes such limitations on a person's liberty as those imposed during parole"). Delgado's requests for relief include more than simply her immediate release from incarceration; accordingly, her habeas petition is not moot despite her release from state incarceration on parole.

### B. Analysis of Delgado's Habeas Claims

#### 1. Claim One: Failure to Object to Criminal Acts That Occurred Outside the Commonwealth

Delgado argues that her trial counsel was ineffective for "fail[ing] to object to alleged criminal acts that occurred outside the Commonwealth of Pennsylvania, its legal jurisdiction, and its venue in a timely manner to avoid prejudice in this case." See (Doc. No. 1 at 5). She identifies the facts in support of her claim as follows:

> On January 14, 2020, the [CCP] made an opening statement that the court will follow the Pennsylvania Rules of Evidence which controls what evidence the lawyers may introduce along with a detailed explanation of what each response means for all parties involved.

See (id.). The Court will dismiss this claim because, as Respondents argue in their supplemental brief, see (Doc. No. 17-1 at 6–11), it is unexhausted and procedurally defaulted.[6]

Although it appears that Delgado included this claim in her original pro se PCRA petition, see (Doc. No. 18-5 at 34 ("[T]here was absolutely no evidence of any type of sexual misconduct within the State of Pennsylvania as this was also in the alleged victim's own testimony in court.")), it was not included in her counseled amended PCRA petition or supporting brief, see (Doc. Nos. 18-6 at 2 (listing claims); 18-7 at 2–4 (same)), it was not included in her counseled post-evidentiary hearing brief, see (Doc. No. 18-2 at 2 (identifying claims)), and neither the CCP nor the Superior Court addressed it as part of her first PCRA proceedings. See (Doc. No. 18-13 at 2–6 (identifying and addressing Delgado's PCRA claims)); Delgado, 2023 WL 2706704, at *1 (stating Delgado's claims on appeal). Delgado did include this claim in her second PCRA petition, see (Doc. No. 18-18 at 2, 14–26); however, the CCP dismissed her second petition without a hearing, and she never filed an appeal from the dismissal to the Superior Court. Thus, this claim is not only exhausted, but it appears to be procedurally defaulted insofar as Delgado could no longer raise it in the state courts because of the PCRA's one-year time bar and waiver provisions. See 42 Pa. C.S. § 9545(b) (setting forth time for filing a PCRA petition); id. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding.").

As indicated above, Delgado can seek to have the Court excuse her procedural default of this claim if she can show "cause and prejudice" or a "fundamental miscarriage of justice." See

---

[6] Respondents generally contend that all of Delgado's claims are unexhausted and procedurally defaulted. See (Doc. No. 17-1 at 6–11). The Court will consider this argument when addressing Delgado's other habeas claims as well.

Coleman, 501 U.S. at 750. Unfortunately, Delgado has not filed a reply brief in which she addresses Respondents' contention that this claim is unexhausted and procedurally defaulted. However, she did indicate in her habeas petition that her PCRA counsel caused her procedural default insofar as counsel did not include the claim in counsel's amended PCRA petition. See (Doc. No. 1 at 5 (responding to question about why she failed to exhaust her state remedies on this claim by stating: "[PCRA counsel] filed an [a]mended [PCRA p]etition did not include it, though I believed it was in my best interest to include it")). Because Delgado is proceeding pro se, the Court liberally construes this statement as her attempt to invoke Martinez's "narrow exception" to establish cause to excuse her procedural default. See 566 U.S. at 9.

Even with this liberal construction, Delgado fails to satisfy her burden under Martinez. See Bousley, 523 U.S. at 621 (concluding that the petitioner has the burden show cause and prejudice or actual innocence to proceed with otherwise procedurally defaulted claims). However, before addressing Delgado's failure, the Court must address Defendants' argument that she somehow procedurally defaulted this claim by filing an untimely second PCRA petition and then failing to exhaust by appealing the CCP's dismissal to the Superior Court. It does not appear that Respondents are correct.

As indicated above, Martinez provides an equitable excuse to overcome a procedural default if a petitioner can show that their claim of ineffective assistance at trial was not presented due to the ineffective assistance of initial-review collateral relief counsel. See 566 U.S. at 9, 13 (explaining that holding was based on "equitable grounds" to "protect prisoners with a potentially legitimate claim of ineffective assistance of trial counsel"). Martinez does not recognize a standalone claim of ineffective assistance of postconviction collateral relief counsel, nor could it because such a claim is not cognizable as an independent, standalone ground for

habeas relief. See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Respondents also fail to cite to any case holding that a habeas petitioner has to exhaust a claim relating to PCRA counsel's ineffectiveness before they may attempt to invoke Martinez to excuse a procedural default. Overall, it does not appear that Delgado's failure to timely raise or exhaust a claim regarding PCRA counsel's ineffectiveness (such as through her second PCRA petition) has any bearing on whether she may rely on Martinez in this case.[7]

This does not mean, however, that Delgado's actions do not impact her Martinez argument in this case (as to this specific habeas claim or her several additional unexhausted claims). As another District Court has explained:

> Martinez provides a limited avenue for relief as to procedurally defaulted claims. See Martinez[, 566 U.S. 1]. To rely on the equitable exception in Martinez to

---

[7] The Court located one decision from another Judge in this District that contains language suggesting that a habeas petitioner is required to exhaust a claim that PCRA counsel was ineffective before raising a claim that PCRA counsel's ineffectiveness excuses a procedural default of a claim that trial counsel was ineffective:

> Before ineffective assistance of counsel can excuse the procedural default of another claim, the ineffective assistance claim generally must be presented in state court as an independent claim in accordance with state procedural rules. Edwards[, 529 U.S. at 452]. In other words, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted" if it is not properly presented in state court. When a petitioner has "multiple opportunities to challenge an error" in state court, "each time [they] fail[] to do so is a procedural default" that "must be excused" before the merits of [their] underlying claim for habeas corpus relief can be considered on its merits in federal court. Richardson v. Superintendent Coal Township SCI, 905 F.3d 750, 759 (3d Cir. 2018).

See Pittman v. Rivello, No. 24-cv-01241, 2025 WL 580598, at *4 (M.D. Pa. Feb. 21, 2025) (Neary, J.), certificate of appealability denied sub nom. Pittman v. Superintendent Huntingdon SCI, No. 25-1439, 2025 WL 4657389 (3d Cir. Nov. 4, 2025) (unpublished).

> excuse the default of his claim, [a Section 2254 petitioner] must show: (1) ineffective counsel on post-conviction review caused the default; (2) counsel's ineffectiveness occurred in the first collateral proceeding when the defaulted claim could have been raised; and (3) the defaulted claim is substantial, meaning it has some merit. See Richardson, [905 F.3d at 762–63] (citing Martinez, 566 U.S. at 14). However, . . . the Supreme Court's subsequent decision in Shinn v. Ramirez, 596 U.S. 366 (2022) "makes Martinez a dead letter in many cases[.]" Williams v. Superintendent Mahanoy SCI, 45 F.4th 713, 723 (3d Cir. 2022). That is because in Shinn, the Court held that "when a federal habeas court convenes an evidentiary hearing for any purpose, or otherwise admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless" the petitioner can show one of two statutory exceptions: (1) a new, and previously unavailable, retroactively applicable constitutional rule; or (2) a factual predicate that could not have been previously discovered through due diligence. Shinn, 596 U.S. at 381, 389 (citing 28 U.S.C. § 2254(e)(2)(a)(i)-(ii)). In short, if neither exception applies, "federal courts may not consider evidence first gathered during [a Martinez] hearing . . . to decide the constitutional claim on the merits." Williams[, 45 F.4th at 723].

See Miller v. Close, No. 23-cv-00021, 2026 WL 852085, at *2 (E.D. Pa. Mar. 27, 2026).[8]

In this case, although Delgado requests an evidentiary hearing in her Section 2254 petition, see (Doc. No. 1 at 14), the Court will not grant this request because she fails to make the required showing under Shinn She has not identified a new, and previously unavailable, retroactively applicable constitutional rule, and she has not argued that this claim (or her other unexhausted claims) are premised on a factual predicate that she could not have previously discovered through due diligence. As such, Delgado is limited to the existing state court record in arguing that Martinez excuses her procedural default in this case.[9] See Williams, 45 F.4th at

---

[8] In Shinn, the Supreme Court explained that under AEDPA, "a state prisoner is responsible for counsel's negligent failure to develop the state postconviction record." See 596 U.S. at 383; see also Williams, 45 F.4th at 723 ("[I]n AEDPA's terms, a prisoner 'fails to develop the factual basis of a claim' even when [their] state post-conviction attorney was negligent.'"). Thus, "Martinez does not excuse a prisoner's separate failure to develop the facts under the AEDPA, for the simple reason that judge-made equitable rules cannot claim supremacy over statutory text." See Williams, 45 F.4th at 723 (citing Shinn, 596 U.S. at 385).

[9] Considering Shinn's significant impact on Martinez and Delgado's ability to establish a factual record in support of her unexhausted and likely procedurally defaulted claims, it was incumbent

723–24 (explaining that unless either exception recognized in Shinn applies, "federal courts must skip hearings altogether and deny habeas relief unless the prisoner prevails on the merits [of the underlying ineffectiveness claim] considering only the state court record").

Turning now to the three requirements needed to invoke Martinez, the Court notes that Delgado satisfies the first two requirements insofar as (1) PCRA counsel's alleged ineffective assistance caused the default because she alleges that PCRA counsel did not include this claim in counsel's amended PCRA petition and (2) the default occurred in the "first collateral proceeding in which the claim could be heard," Cox v. Horn, 757 F.3d 113, 119 (3d Cir. 2014), because it occurred during the proceedings on Delgado's first PCRA petition. Nevertheless, Delgado's first habeas claim fails at the third requirement because it is not "substantial"; in other words, the claim lacks merit. See Cox, 757 F.3d at 119. As the Third Circuit has explained:

> Whether an ineffectiveness claim is "substantial" is "analogous to the substantiality requirement for a certificate of appealability": can reasonable jurists debate whether trial counsel''s performance was ineffective? Gaines v. Superintendent Benner Twp. SCI, 33 F.4th 705, 711 (3d Cir. 2022) (quoting Cox, 757 F.3d at 119). The well-trodden framework for ineffective assistance of counsel asks (1) whether the counsel's performance was deficient, in that it fell below an objective standard of

---

on her to properly present her unexhausted claims to the state court so any necessary factual record could be made. Pennsylvania law provided her with the opportunity to create such a record. See Commonwealth v. Bradley, 261 A.3d 381, 401 (Pa. 2021) ("[A] PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting pro se, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal."); id. at 402 (explaining that if the existing record was insufficient to allow the appellate court to resolve the newly-raised ineffectiveness claims, "the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter" if the petitioner "provide[s] more than mere 'boilerplate assertions of PCRA counsel's ineffectiveness'" (quoting Commonwealth v. Hall, 872 A.2d 1177, 1182 (Pa. 2005))). But because she chose to do it through a second PCRA petition, she was required to timely file it under 42 Pa. C.S. § 9545, see Commonwealth v. Laird, 331 A.3d 579, 597–99 (Pa. 2025) (determining that a PCRA petitioner's allegations of ineffectiveness regarding PCRA counsel do not constitute new facts for purposes of one of the exceptions to the PCRA's one-year time bar), and she did not do so.

> reasonableness, and if so, (2) whether the petitioner suffered prejudice as a result. Strickland[, 466 U.S. at 687–88].

See Moses v. Dist. Att'y Philadelphia, 133 F.4th 251, 259 (3d Cir. 2025).

Here, Delgado's ineffectiveness claim lacks merit for at least three reasons. First, and most importantly, Delgado, who did not file a memorandum of law in support of her petition, never provides specifics for this claim. It is very much unclear how the supporting "facts" identified in her petition somehow support her claim because she does not explain how the CCP's statement about the Pennsylvania Rules of Evidence controlling the evidence the attorneys could introduce during the trial has any bearing on whether her trial counsel should have objected to evidence relating to criminal actions that occurred outside of the Commonwealth of Pennsylvania. She also does not identify the "alleged criminal acts that occurred outside the Commonwealth of Pennsylvania" to which her trial counsel should have objected or indicate when this evidence was allegedly admitted during her trial (presuming that it was so admitted during the trial). See (id.). Overall, Delgado's failure to explain this claim or point to instances where trial counsel should have objected is fatal to her attempt to show that this claim is substantial.

Second, to the extent that Delgado contends that trial counsel was ineffective for failing to object to the CCP's jurisdiction over her criminal case because she engaged in sexual activity with the victim outside of Pennsylvania, she is mistaken. Even if trial counsel filed a motion or otherwise objected to the CCP's jurisdiction over her criminal charges, such a motion would have been meritless because the CCP had jurisdiction and was the proper venue for the prosecution of the charges in her case.

As for the CCP's subject-matter jurisdiction and venue:

"Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented." Commonwealth v. Bethea, [828 A.2d 1066, 1074 (Pa. 2003). "[A] court's competency hinges upon a demonstration that a criminal act occurred within the territorial jurisdiction of the court." [Commonwealth v. Jones, 929 A.2d 205, 208 (Pa. 2007)]. "Jurisdiction is a matter of substantive law." Bethea, 828 A.2d at 1074 (citing McGinley v. Scott, [164 A.2d 424, 428 (Pa. 1960)]); 42 Pa. C.S.[] § 931(a) (defining the unlimited original jurisdiction of the courts of common pleas).

Matters arising from a violation of Pennsylvania's Crimes Code "are entrusted to the original jurisdiction of the courts of common pleas for resolution." [Bethea, 828 A.2d at 1074] (citing 18 Pa. C.S. § 102). "Every jurist within that tier of the unified judicial system is competent to hear and decide a matter arising out of the Crimes Code." Id. (citing Pa. Const. Art. 5, § 5.).

In addition to subject matter jurisdiction, a court's authority to hear a case depends on whether venue is proper in the court's judicial district. Id.[] at 1074. "Venue in a criminal action properly belongs in the place where the crime occurred." Id. "This practice recognizes the necessity of bringing a party to answer for [their] actions in the place where the crime itself occurred because that is where the evidence and the witnesses will most likely be located." Id.

"Subject matter jurisdiction and venue are distinct. However, since jurisdiction references the power of a court to entertain and adjudicate a matter while venue pertains to the locality most convenient to the proper disposition of a matter, venue can only be proper where jurisdiction already exists." Id.[] at 1074–75 (citing 92A C.J.S., Venue § 2).

The "general rule" governing whether an act falls within the territorial boundaries of a Pennsylvania court is as follows:

> (a) **General rule** -Except as provided in this section, a person may be convicted under the law of this Commonwealth of an offense committed by his own conduct or the conduct of another for which he is legally accountable if either:
>
> [(1) the conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth;
>
> (2) conduct occurring outside this Commonwealth is sufficient under the law of this Commonwealth to constitute an attempt to commit an offense within this Commonwealth;

> (3) conduct occurring outside this Commonwealth is sufficient under the law of this Commonwealth to constitute a conspiracy to commit an offense within this Commonwealth and an overt act in furtherance of such conspiracy occurs within this Commonwealth;
>
> (4) conduct occurring within this Commonwealth establishes complicity in the commission of, or an attempt, solicitation or conspiracy to commit, an offense in another jurisdiction which also is an offense under the law of this Commonwealth;
>
> (5) the offense consists of the omission to perform a legal duty imposed by the law of this Commonwealth with respect to domicile, residence or a relationship to a person, thing or transaction in this Commonwealth; or
>
> (6) the offense is based on a statute of this Commonwealth which expressly prohibits conduct outside this Commonwealth when the conduct bears a reasonable relation to a legitimate interest of this Commonwealth and the actor knows or should know that his conduct is likely to affect that interest.
>
> **(b) Exception.**--Paragraph (a)(1) of this section does not apply when causing a particular result is an element of an offense and the result is caused by conduct occurring outside this Commonwealth which would not constitute an offense if the result had occurred there, unless the actor intentionally or knowingly caused the result within this Commonwealth.]

18 Pa. C.S.[] § 102[(a)–(b)].

"Conduct" is defined for the purpose of this rule as "[a]n action or omission and its accompanying state of mind, or, here relevant, a series of acts and omissions." 18 Pa. C.S.[] § 103.

In a criminal case, courts should only exercise jurisdiction beyond the territorial limits of the judicial district in which each court sits when at least one essential element of an offense has occurred within that district:

> The law is clear that the locus of a crime is always in issue, for the court has no jurisdiction of the offense unless it occurred within the county of trial, or unless, by some statute, it need not[.] For a county to take jurisdiction over a criminal case, some overt act involved in that crime must have occurred within that county. In order to base jurisdiction on an overt act, the act must have been essential to the crime, an act which is merely incidental to the crime is not sufficient.

Commonwealth v. Seiders, 11 A.3d 495, 497 (Pa. Super. 2010) (citations and quotation marks omitted).

See Commonwealth v. Washington, 344 A.3d 417, 419–20 (Pa. Super. Ct. 2025), appeal denied, 355 A.3d 1266 (Pa. 2026).

In this case, Delgado does not explain how the CCP lacked jurisdiction and was an improper venue for her criminal case. All her charges relate to conduct which occurred in Monroe County, Pennsylvania, when the minor victim was 14–15 years old. See (Doc. Nos. 18-2 at 35, 46, 82–240). Additionally, for Delgado's kidnapping conviction, even though Delgado did not engage in actual sexual activity with the minor victim until she and Paduani had already taken him to South Carolina, see (id. at 150, 152–54), it does not affect the CCP's jurisdiction over this charge because she and Paduani kidnapped him in Pennsylvania insofar as they picked him up from Monroe County and then transported him to South Carolina. See 18 Pa. C.S. § 2901(a) ("[A] person is guilty of kidnapping if [they] unlawfully remove[] another a substantial distance under the circumstances from the place where [they are] found . . . ."). Although Pennsylvania's kidnapping statute requires that the government also prove that Delgado kidnapped the minor victim with the intent to "facilitate commission of any felony," see id. § 2901(a)(2), it does not require that a defendant intend to commit the felony in Pennsylvania. See, e.g., Commonwealth v. Passmore, 857 A.2d 697, 707–08 (Pa. Super. Ct. 2004) (concluding that sufficient evidence supported defendant's kidnapping conviction where defendant kidnapped the victim and then killed her in Maryland).[10] In other words, the statute requires the defendant

[10] The same rationale applies to Delgado's criminal attempt conviction. Under Pennsylvania law, "[a] person commits an attempt when, with intent to commit a specific crime, [they] do[] any act which constitutes a substantial step toward the commission of that crime." See 18 Pa. C.S. § 901(a). Delgado acted in a manner constituting a substantial step towards the commission of statutory sexual assault, which prohibits, inter alia, a person "engag[ing] in sexual intercourse with a complainant under the age of 16 years [when] that person is 11 or more years old than the

to act with the purpose to facilitate "any felony," see 18 Pa. C.S. § 2901(a)(2), and does not require that the Commonwealth prove that the defendant kidnapped the victim with the intent to facilitate commission of any felony in the Commonwealth of Pennsylvania.

Third, to the extent that Delgado is somehow arguing that her trial counsel should have objected to evidence that she engaged in sexual activity with the minor victim outside of the Commonwealth because such evidence was irrelevant, she fails to show that any such objection would have been meritorious or otherwise resulted in a not guilty verdict on any or all of the crimes charged. Under Pennsylvania law, evidence of other acts is admissible where the specific crime or act was part of a chain, sequence, or natural development of events forming the history of a case. See Commonwealth v. Robinson, 864 A.2d 460, 496 (Pa. 2004). This "res gestae exception is also known as the 'complete story rationale,' permitting admission of other act evidence 'to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" See DiValentino v. Commonwealth, No. 24-cv-00030, 2026 WL 928092, at *11 (M.D. Pa. Apr. 6, 2026) (quoting Commonwealth v. Lark, 543 A.2d 491, 497 (Pa. 1988)). Therefore, there is no reasonable likelihood that the CCP would have sustained any objection by Delgado's trial counsel to the introduction of evidence pertaining to what transpired between Delgado and the victim outside of Pennsylvania because those acts were part of the complete story of the case.[11]

complainant and the complainant and the person are not married to each other," see 18 Pa. C.S. § 3122.1(b), when she and Paduani picked up the minor victim in their car in Monroe County, Pennsylvania.

[11] It appears that trial counsel for Paduani objected to the relevance of evidence pertaining to events occurring in South Carolina (or otherwise outside Pennsylvania), and the CCP overruled the objection. See (Doc. No. 18-2 at 156–57).

In conclusion, Delgado fails to show that she has a substantial ineffectiveness claim relating to her trial counsel's alleged failure to object to acts that occurred outside of the Commonwealth of Pennsylvania. Therefore, her first claim remains procedurally defaulted, and this Court is barred from granting relief based upon it. See Cox, 757 F.3d at 119–21.

**2. Claim Two: Failing to Investigate and Subpoena Available Medical Records**

For her second habeas claim, Delgado asserts that her trial counsel failed to investigate and subpoena medical records showing that neither she nor Paduani had any sexually transmitted diseases ("STDs") in 2018. See (Doc. No. 1 at 6). Delgado indicates that the medical records from the South Carolina correctional facility in which she was incarcerated would have shown that she was never treated for STDs. See (id.). She also indicates that after she was transferred to the Monroe County Correctional Facility, she requested and was tested for STDs, and the results came back negative. See (id.). Delgado believes that this evidence would have countered the Commonwealth's evidence from the minor victim that he received a STD—gonorrhea—after having sex with her. See (id.); see also (Doc. No. 18-2 at 191 (minor victim's testimony that he caught gonorrhea after having sex with Delgado)).

Delgado's second claim is unexhausted and procedurally defaulted. This claim was not included in her counseled amended PCRA petition or counseled post-PCRA hearing brief, see (Doc. Nos. 18-7 at 2–4; 18-12 at 3–9), and the CCP did not address it when denying her amended PCRA petition, see (Doc. Nos. 18-13 at 2–7 (identifying and addressing PCRA claims); 18-16 at 1–4 (same)). Additionally, the Superior Court did not address it as part of Delgado's appeal from the CCP's denial of her amended PCRA petition. See Delgado, 2023 WL 2706704, at *1–2 (identifying and resolving Delgado's two claims on appeal). Delgado did include the claim in

her second, untimely PCRA petition, see (Doc. No. 18-18 at 2–3), which she also failed to fully exhaust.

Delgado appears to attempt to invoke Martinez to excuse her procedural default by noting in her petition that PCRA counsel never included her second claim in the counseled amended PCRA petition. See (Doc. No. 1 at 7). To the extent that Delgado is relying on Martinez, she fails to show that the Court should excuse her procedural default.

PCRA counsel's failure to present the claim for the CCP's consideration does not excuse the procedural default of Delgado's unexhausted ineffectiveness claim because it is insubstantial. There is no record upon which to evaluate Delgado's claim because the state court record lacks any information about Delgado's medical records pertaining to any STDs, and the Court cannot hold a hearing for her to introduce those records because she does not satisfy either of the Shinn requirements for such a hearing. See Williams, 45 F.4th at 723 (describing necessary showing for an evidentiary hearing on a Martinez claim following Shinn).[12] Moreover, when evaluating whether Delgado suffered any prejudice, the prosecution did not need to show that she and the minor victim had sex to prove the elements of any of the charged offenses. Therefore, Delgado cannot snow that she was prejudiced by trial counsel's alleged failure to obtain her medical records referencing a lack of STDs because the failure is not reasonably likely to have changed

[12] Even in her petition, Delgado does not indicate, inter alia, the date of her arrest, the dates she was confined in the two correctional facilities, and when she received medical testing to show whether she had any STDs. Moreover, as it appears that gonorrhea is generally curable with proper medical treatment, see Centers for Disease Control, Gonorrhea, https://www.cdc.gov/gonorrhea/about/index.html (last visited July 24, 2026) (indicating that "the right treatment can cure gonorrhea"), the specific dates are relevant to whether the lack of treatment or negative tests would show Delgado's medical condition on the date she had sex with the minor victim.

the outcome of her trial in any respect.[13] Accordingly, Delgado fails to make a sufficient showing under Martinez to excuse the procedural default of her second habeas claim, and the Court will dismiss this claim.

**3. Claim Three: Failing to Request That Delgado Submit to a STD Test**

For her third habeas claim, Delgado asserts that her trial counsel was ineffective for failing to request a STD test to defend her against allegations that the minor victim obtained an STD from her. See (Doc. No. 1 at 8). In support of this claim, Delgado claims that:

> Trial counsel was aware of the allegation of an [STD] being involved by way of text messages that was [sic] in the possession of the [Pennsylvania State] Troopers. He didn't submit me for testing, and he didn't act on the knowledge he possessed. During the interrogations and interviews, both at the place of arrest at D.C.C. in South Carolina and at M.C.C.F. in Pennsylvania by the State Troopers, it was alleged that I had sex with the alleged victim, that I had an [STD] and that there were "male and female fluids" on the alleged victim. I denied all allegations pertaining to sex with the alleged victim.

See (id.). Delgado also recognizes that she failed to exhaust this claim but places blame on her PCRA counsel for failing to include it in the amended PCRA petition. See (id.).

The Court finds that this claim is unexhausted and procedurally defaulted for the same reasons stated in dismissing her second habeas claim. She has not met her burden to show that Martinez's exception excuses her procedural default because her ineffectiveness claim regarding trial counsel is insubstantial. There is no state court record upon which this Court can determine whether trial counsel acted reasonably in not requesting that Delgado submit to a STD test, and

[13] The Court notes that Delgado's trial counsel extensively cross-examined the minor victim about his testimony, including his testimony about obtaining gonorrhea after having sex with Delgado. See (Doc. No. 18-2 at 200–36). However, the Court also notes that the transcript appears to incorrectly show said cross-examination was conducted by Paduani's trial counsel instead of Delgado's trial counsel. Compare (id. at 3 (indicating Delgado's trial counsel's cross-examination of the minor victim started on page 200)), and (id. at 200 (showing the CCP allowed Delgado's trial counsel to start his cross-examination), with (id. (stating that Paduani's trial counsel was conducting the cross-examination)).

Delgado does not show how the outcome of her trial would have been different had she received such a test. It is unclear whether any test would have been conclusive evidence that she did not transmit gonorrhea to the minor victim through their sexual activity or whether it would have even served as persuasive impeachment evidence, especially considering trial counsel's extensive cross-examination of the victim during the trial. As already explained, the Commonwealth did not have to show she and the victim actually had sex to prove their case beyond a reasonable doubt. Accordingly, the Court finds that Delgado fails to make a sufficient showing under Martinez to overcome the procedural default of her third habeas claim, and the Court will dismiss this claim.

#### 4. Claim Four: Trial Counsel's Failure to Investigate and Call Character Witnesses at Trial

Delgado's fourth habeas claim relates to her belief that her trial counsel was ineffective by failing to investigate and call character witnesses who would have presented evidence of her good character, despite trial counsel knowing the names, addresses, and phone numbers for such witnesses. See (Doc. No. 1 at 9). Delgado identifies three character witnesses that trial counsel knew of and did not call in her petition, and she claims that "[a] case like [hers] requires an overwhelming need for character evidence." See (id.). Delgado again acknowledges that she did not exhaust this claim, and she blames her PCRA counsel for failing to include it in the amended habeas petition even though she "believed it was in [her] best interest to include it." See (id. at 10).

This claim is unexhausted and procedurally defaulted, and Delgado has not met her burden to establish an excuse for the procedural default. The claim is unexhausted because Delgado did not include it in her amended PCRA petition, neither the CCP nor the Superior Court ever had the opportunity to address it, and it was not substantively addressed during her

second PCRA proceedings (which she never fully exhausted anyway). Additionally, the state court record is silent on trial counsel's failure to investigate character witnesses, and Delgado, who appears to rely on Martinez to excuse her procedural default, does not show that either statutory exception identified in Shinn applies because she does not identify a new, retroactively applicable constitutional rule or a factual predicate that she could not have previously discovered through due diligence. Therefore, there is no record upon which this Court can analyze the merits of Delgado's claim and, consequently, she cannot show that this is a substantial claim. Accordingly, Delgado fails to make a sufficient showing under Martinez to excuse the procedural default of her fourth habeas claim, and the Court will dismiss this claim.

#### 5. Claim Five: Trial Counsel's Failure to Investigate an Exculpatory Witness

Delgado asserts that her trial counsel failed to investigate an alleged "exculpatory witness" named Allen Tyler, who had allegedly "interacted with the alleged victim as to the reason why the alleged victim ran[] away from home." See (Doc. No. 1 at 16). Delgado admits that this claim is unexhausted but blames her PCRA counsel for the failure to raise it as part of her first PCRA proceedings. See (id.).

This claim is unexhausted and procedurally defaulted, and Delgado has not demonstrated that Martinez excuses the procedural default. The claim is unexhausted because Delgado did not include it in her amended PCRA petition, neither the CCP nor the Superior Court ever had the opportunity to address it, and it was not substantively addressed during her second PCRA proceedings (which she never fully exhausted anyway). Additionally, as with her last habeas claim, the state court record is silent on trial counsel's failure to investigate any witnesses, including Mr. Tyler, and Delgado does not show that either statutory exception identified in Shinn applies because she does not identify a new, retroactively applicable constitutional rule or

a factual predicate that she could not have previously discovered through due diligence. Therefore, there is no record upon which this Court can analyze the merits of Delgado's claim and, consequently, she cannot show that this is a substantial claim. Accordingly, Delgado fails to make a sufficient showing under Martinez to excuse the procedural default of her fifth habeas claim, and the Court will dismiss this claim.

### 6. Claim Six: Trial Counsel's Failure to Investigate and Present Evidence of Delgado's Long History of Mental Illness

Delgado contends that her trial counsel failed to investigate and present evidence relating to her lengthy history of mental illness stemming from abuse, such as medical records from the Department of Social Security's Medical Division. See (Doc. No. 1 at 19). She identifies the "facts" in support of her claim as follows:

> Trial counsel ignored admissable [sic] evidence of my long history of mental illness, stemming form as far back as my childhood, that would involve psychological, physical and sexual abuse to which I was on Social Security Disability for. The alleged victim had informed that he, himself, was being abused verbally, mentally, physically and sexually; was being "recorded"; was going to run away from home and that if he can't he would take his life[, w]hich prompted me to take action unbeknownst to me that I was committing any crime. This lack of information, medical records and its testimony would have been beneficial at trial.

See (id.). Delgado also asserts that although her PCRA counsel included this claim "in part" in the amended PCRA petition, counsel "excluded other aspects that [she] believed was [sic] in [her] best interest to include[,] and [counsel] refused to take it further than the Superior Court, even though [she] expressed that [she] wanted to." See (id.).

In addressing Delgado's sixth claim, the Court starts with her assertion that (1) PCRA counsel included only part of her desired claim in the amended PCRA petition and (2) PCRA counsel "refused to take it further than the Superior Court" even though she wanted counsel to do so. See (id.). As to the former assertion, Delgado never specifies the other part(s) of this claim

that counsel failed to include in the amended PCRA petition. Moreover, she never exhausted any additional part(s) by presenting them to the CCP and Superior Court. Thus, her unidentified additional part(s) of this claim are unexhausted and procedurally defaulted, and she cannot employ Martinez to excuse this procedural default because the state court record is obviously silent as to any additional part(s) that Delgado fails to identify here, she does not show that an evidentiary hearing is warranted by satisfying either of the two statutory exceptions referenced in Shinn, and she otherwise fails to show that these other part(s) of her ineffectiveness claim present a substantial claim that her trial counsel was ineffective.

As for the latter assertion, to the extent that Delgado attempts to argue that PCRA counsel's ineffectiveness during her post-conviction collateral appeal somehow excuses any procedural default, she cannot assert such an argument here. Delgado cannot rely on PCRA counsel's failure to include the claim in her appeal to the Superior Court or their failure to take action beyond appealing to the Superior Court as a basis to excuse her procedural default because Martinez applies only to ineffectiveness causing procedural default during initial-review collateral proceedings. See 566 U.S. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." (citations omitted)); Norris v. Brooks, 794 F.3d 401, 404–05 (3d Cir. 2015) ("Martinez made very clear that its exception to the general rule of Coleman applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals.").

Turning now to Delgado's claim that trial counsel was ineffective for failing to investigate and present evidence relating to her lengthy history of mental illness, the CCP rejected this claim, explaining as follows:

> Generally, the question of whether trial counsel was ineffective for failing to investigate and present sufficient mitigating evidence depends upon a myriad of factors, including the reasonableness of counsel's investigation, the mitigation evidence that was actually presented, and the mitigation evidence that could have been presented. Commonwealth v. Collins, 888 A.2d 564, 580 (Pa. 2005). None of these factors, by itself, is dispositive of the question presented, because even if the investigation conducted by counsel was unreasonable, such fact alone will not result in relief if the defendant cannot demonstrate that [they were] prejudiced by counsel's conduct. Id.
>
> [Trial counsel] did not fail to investigate . . . Delgado's mental health background. [Trial counsel] met with . . . Delgado on a bi-weekly basis. (N.T., 4/29/22, p. 9). He had discussions with . . . Delgado about her history with mental health and gained further insight after receiving the results of . . . Delgado's competency evaluation. (N.T., Id., pp. 22–23). [Trial counsel] was aware of . . . Delgado's psychiatric diagnoses from the competency evaluation. (N.T., Id., p. 23).
>
> . . . Delgado argues that additional investigation into her mental health could have furthered a diminished capacity defense. (N.T., [Id.], p. 26). Diminished capacity is not a defense to any of . . . Delgado's charges. Her diagnoses of Major Depressive Disorder, Post Traumatic Stress Disorder and Borderline Personality Disorder would also not be sufficient to raise an insanity defense. Commonwealth v. Banks, 521 A.2d 1 (Pa. 1987) ("We note that personality disorders, alone, are insufficient to raise an insanity defense.").

See (Doc. No. 18-13 at 3–4).

The Superior Court never addressed this claim on appeal. See Delgado, 2023 WL 2706704, at *1. Although the Superior Court identified Delgado's relevant appellate claim as whether her trial counsel "ignored" her serious mental health issues, see id., it proceeded to construe the claim as asserting in pertinent part that trial counsel failed to "obtain qualified mental health professionals despite knowing that Delgado had mental health issues." See id. Because it does not appear that Delgado's sixth claim was presented and addressed by the Superior Court, it is unexhausted and procedurally defaulted unless she can show cause and

prejudice or a fundamental miscarriage of justice. Delgado does not argue or attempt to make such a showing in this case, and she does not even contend that Martinez should excuse any procedural default. Nor could she because, as explained above, the procedural default would have been caused by PCRA counsel's conduct on appeal, and Martinez's limited equitable exception does not apply to such conduct. Therefore, the remainder of Delgado's sixth claim is procedurally defaulted, and the Court will dismiss it.

Although this claim is procedurally defaulted, the Court notes that even if the Court considered it on the merits, it would not lead to the Court granting habeas relief. For Delgado to obtain habeas relief on this claim, she must show that the state courts' decisions were (1) "contrary to" or involved an unreasonable application of clearly established case law, namely, Strickland; see id. § 2254(d)(1); or (2) were "based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," see id. § 2254(d)(2). At no point in Delgado's petition does she identify these standards or attempt to argue that she satisfies either standard. Delgado, who never discusses the state courts' decisions in her petition, does not argue or attempt to show that these decisions were "based upon an unreasonable determination of the facts in light of the evidence presented" in proceedings before the state courts, see id., and even if she included such an argument in his petition, she fails to rebut any factual findings by clear and convincing evidence. See id. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). In addition, Delgado does not argue or attempt to show that the CCP's decision was "contrary to" Strickland, nor could she, considering that the CCP applied applicable

state law consistent with Strickland. See (Doc. No. 18-13 at 3 (explaining that Delgado must show both that trial counsel's conduct was unreasonable and that she was prejudiced by counsel's conduct)); see also Werts, 228 F.3d at 202–04 (holding that a Pennsylvania state court applying Pennsylvania's ineffective assistance of counsel standard did not contradict Strickland).

Delgado frames her arguments in a manner suggesting that she believes that this Court conducts a de novo review of her claims. By doing so, she ignores the fact that, as to her sixth claim, the CCP rejected it on its merits, which means that this Court will not conduct a de novo review of those claims by applying Strickland and instead will apply a high level of deference both to her trial counsel's actions and to the state court's determinations that counsel's actions were constitutionally adequate. See Dunn, 594 U.S. at 739; Knowles, 556 U.S. at 123 (citing Yarborough, 540 U.S. at 5–6). Moreover, Delgado must go beyond a showing that the state courts' determinations were incorrect and show that they were unreasonable. See Knowles, 556 U.S. at 123.

Delgado has not made any such showing here. Even if she recognized her burden to show that the CCP's determination was unreasonable, she could not do so here. The CCP reasonably determined that Delgado's assertion that trial counsel failed to investigate her mental health issues was unsupported by the factual record and, just as importantly, even if counsel should have conducted any additional investigation, Delgado failed to show how she was prejudiced. See (Doc. No. 18-13 at 3–4). She has also failed to make any showing of prejudice here, as she does not explain how information about her mental health history "would have been beneficial at trial." See (Doc. No. 1 at 19). Accordingly, even if Delgado had not procedurally defaulted this claim, it lacks merit.

### 7. Claim Seven: Trial Counsel's Failure to Retain an Expert to Conduct a Psychological Evaluation and Sexual Risk Assessment

For her seventh claim, Delgado asserts that trial counsel was ineffective for failing to retain a clinical and forensic psychologist to perform a full psychological evaluation and risk assessment of her, due to her "past and long history of mental illness and abuse as a child into her young adulthood." See (Doc. No. 1 at 22). Delgado claims that:

> This evaluation would have been beneficial to [her] defense at trial as [she] had been on Social Security Disability for nine . . . years. Medical records would have also been beneficial. The lack of testimony of a [m]edical [p]sychologist and medical records caused prejudice to [her] and [her] trial, especially since trial counsel had prior knowledge that the alleged victim informed [her] himself that he was: being abused verbally, mentally, physically and sexually; being "[r]ecorded"; planning to run away from home and that if he couldn't he would take his life. All of which prompted [her] to take action unaware that [she] was committing any crime. This information and a psychological evaluation, not only a competency evaluation, would have been beneficial to the defense at trial.

See (id.). Delgado further admits that she failed to exhaust this claim; however, she asserts that her PCRA counsel failed to raise this claim in her amended PCRA petition even though she thought it was in her best interest to include it. See (id.).

After reviewing the state court record, the Court finds that, contrary to Delgado's assertion in her petition that that PCRA counsel failed to raise a claim relating to trial counsel's alleged ineffectiveness for failing to retain a mental health expert at trial in her amended PCRA petition, see (id.), not only did counsel raise the claim, but the claim was fully exhausted.[14] PCRA counsel raised Delgado's claim in her amended PCRA petition. See (Doc. No. 18-7 at 2 ("Trial counsel failed to . . . seek an expert witness or witnesses to properly prepare and mount a

[14] To the extent that Delgado argues that trial counsel was ineffective for failing to obtain her medical records pertaining to her mental health history, this argument is duplicative of her sixth habeas claim, which the Court has already addressed. As such, the Court will not address it again here and will limit the analysis to her contention that trial counsel should have hired a mental health professional to evaluate her.

defense given [Delgado's] longstanding mental illness and psychiatric disorders . . . .")). Furthermore, both the CCP and the Superior Court addressed this claim when determining that Delgado was not entitled to PCRA relief. See (Doc. No. 18-13 at 4); Delgado, 2023 WL 2706704, at *1. The CCP determined that Delgado's claim lacked merit, pointing out that: (1) any additional information about her mental health would not have "furthered a diminished capacity defense," see (Doc. No. 18-13 at 3–4); (2) the "psychiatric characteristics [she] wished to highlight through a mental health examination, such as her multiple mental health diagnoses and her history of abuse, were known to the [CCP] at the time of sentencing and were taken into consideration," see (id. at 4); and (3) she "failed to prove that she was prejudiced by [trial counsel's] failure to seek additional mental health evaluations." See (id.). As for the Superior Court, it concluded that Delgado's claim that trial counsel was ineffective for failing "to obtain and consult with mental health professionals" failed because she failed to show that trial counsel's conduct constituted ineffective assistance per se and that "trial counsel's failure prejudiced her." See Delgado, 2023 WL 2706704, at *1. Therefore, Delgado fully exhausted her claim that trial counsel was ineffective for failing to retain a mental health expert.

Given that Delgado fully exhausted this claim, she has the burden to show that the state courts' decisions were (1) contrary to or involved an unreasonable application of Strickland or "based upon an unreasonable determination of the facts in light of the evidence presented" in her PCRA proceedings. See 28 U.S.C. § 2254(d)(1)–(2). Delgado has not satisfied this burden. She does not argue or attempt to show that the state courts unreasonably determined the facts in light of the evidence presented in her PCRA proceedings or rebut any factual findings by clear and convincing evidence. See id. § 2254(e)(1). She also fails to demonstrate that the state courts' determinations decision were "contrary to" Strickland or that they unreasonably applied

Strickland. Regarding the latter failure, Delgado never explains how, even if trial counsel's conduct in not seeking a mental health expert was reasonable, she suffered any prejudice. She never addresses in her petition how a mental health evaluation would have helped her defense; rather, she simply states her belief that it "would have been beneficial to the defense at trial." See (Doc. No. 1 at 22). Also, as the CCP noted, insofar as Delgado believes that such an evaluation would have been helpful for a diminished capacity defense, she could not have raised such a defense at trial because Pennsylvania recognizes it only in cases involving murder charges. See (Doc. No. 18-13 at 3–4); Commonwealth v. Bardo, 105 A.3d 678, 716 (Pa. 2014) (explaining that "a defense of diminished capacity . . . is a very limited defense" which only acts to mitigate first-degree murder to third-degree murder); Commonwealth v. Hutchinson, 25 A.3d 277, 312 (Pa. 2011) ("A defense of diminished capacity, whether grounded in mental defect or voluntary intoxication, is an extremely limited defense available only to those defendants who admit criminal liability but contest the degree of culpability based upon an inability to formulate the specific intent to kill."). Accordingly, Delgado's seventh claim is meritless, and the Court will deny it.

### 8. Claim Eight: Trial Counsel's Failure to Object to the Prosecutor's Remarks During the Trial

Delgado argues that trial counsel was ineffective for failing to object to "prejudicial and inappropriate remarks made by the Commonwealth during [the] trial." See (Doc. No. 1 at 25). She identifies the facts in support of this claim as follows:

> Upon further review of the trial transcripts, . . . [Paduani] and I[] took notice that the inappropriate remarks[,] claims and false statements during the trial and in closing arguments were intentionally removed from the transcripts by the Commonwealth. The following is a brief summarization of what the Commonwealth said: that we are "[k]idnappers, monsters, predators, and child molesters"; that the alleged victim was our "Boy toy"; discriminating against our age difference by stating to the jury that it was not only nasty but makes us

> predators; that I raped and gave the alleged victim an [STD], "[g]onorrhea," in the state of South Carolina; that we are monsters that prey on children, are child molesters and cannot go free; saying "whose child is next to these professional online predators that seek kids out online. We don't know how many other children became victims. What we do know is that there are other children that were victims of these defendants and those other states will get them and so will the Federal Government. We reported these preditors [sic] that seek out kids for sex. We reported them to South Carolina, North Carolina[,] and the Federal Government. But we must be the first to stop them from getting to any other child." In response to all of this [I] confronted [my trial counsel] about these untrue statements and filed a complaint with the Disciplinary Board of the Supreme Court of Pennsylvania, for the second time, on March 28, 2020. Trial counsel informed the Assistant District Attorney, who prosecuted us, of what we were going to file with the Disciplinary Board. Having been forewarned by our trial counsels, the ADA took immediate action by filing a motion for a copy of the trial transcripts on March 12, 2020[,] which was granted on March 16, 2020. The ADA had no reason to request the trial transcripts at that time since the defense had not filed anything nor was there any other reason that would be justifiable. However[,] the need to retain the transcripts was clear, to change the transcripts by removing information from the transcripts, illegally altering the documents because of the ADA's actions and wrongdoing during the trial and in closing arguments to the jury, and to see that we, the defendants, had no evidence for an appeal.

See (id. at 25–26). Delgado acknowledges that she failed to exhaust this claim and once again blames PCRA counsel for failing to include it in the amended PCRA petition. See (id. at 26).

This claim is unexhausted and procedurally defaulted, and Delgado has not demonstrated that Martinez excuses the procedural default.[15] The claim is unexhausted because Delgado did not include it in her amended PCRA petition, neither the CCP nor the Superior Court ever had the opportunity to address it, and it was not substantively addressed during her second PCRA proceedings (which she never fully exhausted anyway). Delgado does not show that either statutory exception identified in Shinn applies because she does not identify a new, retroactively applicable constitutional rule or a factual predicate that she could not have previously discovered

[15] To the extent that Delgado's claim can be construed as a claim on behalf of Paduani as well, the Court will not consider it here because he is not a party to these proceedings, and it is impermissible for Delgado to assert claims on his behalf.

through due diligence. Additionally, the state court record is silent on this claim, as not only do the transcripts not reflect most Delgado's representations about the prosecutor's statements during the trial but there were no references to claims about the government tampering with the trial transcripts in any fashion.[16] Therefore, there is no record upon which this Court can analyze the merits of Delgado's claim and, consequently, she cannot show that this is a substantial claim. Accordingly, Delgado fails to make a sufficient showing under Martinez to excuse the procedural default of her eighth habeas claim, and the Court will dismiss this claim.

### 9. Claim Nine: Trial Counsel Failed to Object to the Prosecutor's Inappropriate and Prejudicial Remarks to the Jury After Jury Selection

For her ninth claim, Delgado contends that her trial counsel was ineffective for failing to object to the prosecutor's "prejudicial and inappropriate remarks" to the jury "after the jury was

---

[16] Delgado does not appear to recognize that the prosecution does not control the content of a trial transcript; instead, the court reporter is responsible for the trial transcript. See Pa. R.J.A. 4001–16 (providing "Rules Governing Court Reporting and Transcripts"). As such, Delgado is implying that the court reporter unlawfully altered the trial transcript without providing any proof of such an assertion. Her reference to the prosecution filing a motion to request that the court reporter transcribe the notes from trial, see (Doc. No. 1 at 26), which is listed on the docket in the case, see CCP Dkt., is not evidence showing that the trial transcripts were altered.

In addition, to the extent that the trial transcripts support any of Delgado's representations, such as the prosecutor informing the jury during her opening statement and closing argument that Delgado gave the minor victim gonorrhea, see (Doc. Nos. 18-2 at 23; 18-4 at 152), trial counsel would not have had a reasonable basis to object to the prosecutor's comment because the minor victim later testified that Delgado gave him gonorrhea. See (Doc. No. 18-2 at 191). The Court also notes that the prosecutor referred to Delgado and Paduani as "predators" in her opening statement and closing arguments, see, e.g., (Doc. Nos. 18-2 at 18, 21, 26; 18-4 at 133, 134, 152); however, Delgado fails to show that any objection to those statements prejudiced her considering the facts of her case. See Commonwealth v. Duffy, 832 A.2d 1132 (Pa. Super. Ct. 2003) ("Prosecutorial misconduct occurs when the effect of the prosecutor's comments would be to prejudice the trier of fact, forming in its mind fixed bias and hostility toward the defendant so that it could not weigh the evidence objectively and render a true verdict.").

selected." See (Doc. No. 1 at 29). In her petition, Delgado identifies the factual basis for this claim as follows:

> On January 3, 2020[,] a jury was selected and a statement was made by the . . . Assistant District Attorney . . . to the jury that "the defendants are bad people because they lost their children to the state." This statement was prejudicial and from the start caused the jury to[,] in turn, become prejudiced against us in this case. We had asked our attorneys . . . for a new jury to be selected. However, our request[s were] ignored. Trial counsel failed to object to what the Commonwealth stated to the jury. He also failed to make a motion to the court about the prejudicial remark. Whether true or not[,] this issue had no factor with the case or the charges against us.

See (id.). As with her other claims, Delgado admits that this claim is unexhausted but claims her PCRA counsel is responsible for the failure to exhaust because they did not include it in her amended PCRA petition. See (id.).

Delgado's ninth claim is yet another unexhausted and procedurally defaulted claim, and she has not shown that Martinez excuses the procedural default. The claim is unexhausted because Delgado did not include it in her amended PCRA petition, neither the CCP nor the Superior Court ever had the opportunity to address it, and it was not substantively addressed during her second PCRA proceedings (which she never fully exhausted anyway). Additionally, the state court record is silent on trial counsel's failure to object to the prosecutor's alleged statements to the jury,[17] and Delgado does not show that either statutory exception identified in

---

[17] The Court notes that the transcript from jury selection shows that, while informing the jury about the individuals who would testify at trial and providing a summary of the facts of the case, the prosecutor stated: "[Delgado and Paduani] had gotten their children taken away from them from their Children & Youth down in that area, so they had no children." See (Doc. No. 18-1 at 17–18). However, the prosecutor did not, as Delgado alleges, state that "the defendants are bad people because they lost their children to the state." See (Doc. No. 1 at 29). Moreover, Delgado does not explain how the prosecutor's comment was improper, and the removal of her children from her home was brought out during the testimony at trial. The minor victim testified that Delgado shared with him that her children had been taken away, see (Doc. No. 18-2 at 145–46), and Delgado testified on direct examination that her children were taken away from her and now permanently live with her mother-in-law. See (Doc. Nos. 18-3 at 120; 18-4 at 4, 5). Overall, to

Shinn applies because she does not identify a new, retroactively applicable constitutional rule or a factual predicate that she could not have previously discovered through due diligence. Therefore, there is no record upon which this Court can analyze the merits of Delgado's claim and, consequently, she cannot show that this is a substantial claim. Accordingly, Delgado fails to make a sufficient showing under Martinez to excuse the procedural default of this claim.

#### 10. Claim Ten: Trial Counsel's Failure to Object to Discord Messages

For her tenth habeas claim, Delgado argues that trial counsel was ineffective for failing to "object to 'Discord' text messages that was [sic] known to counsel and was [sic] intentionally deleted by the alleged victim and was [sic] not fully investigated or subpoenaed by the Pennsylvania Stat [sic] Troopers or counsel for criminal purpose of activity with a minor." See (Doc. No. 1 at 32). She states the supporting facts for this claim as follows:

> I informed my trial counsel that portions and full sections of messages were missing that would have been beneficial for us since it would show the alleged victims [sic] allegations against his family and would have completed the conversations between him and myself. The State Troopers at no time subpoenaed the text messages from the place of operations, "Discord, LLC," who had the knowledge that there were messages deleted by the alleged victim. So my trial counsel failed to object to the "Discord" text messages knowing that the messages were not completely intact and parts were being withheld by the Commonwealth that I sent to the District Attorneys [sic] Office[, w]hich the State Troopers failed to release and/or disclose their "Discord" text messages from their forensic investigation on the cell phones, ours (the defendants [sic]) and the alleged victims [sic], that the State Troopers failed to subpoena the records from "Discord."

See (id.). Delgado admits that she failed to exhaust this claim but claims that PCRA counsel failed to include it in her amended PCRA petition even though it was in her best interest to include it. See (id.).

---

the extent that the state court record was sufficient for the Court to analyze this statement, Delgado has not presented a substantial ineffectiveness claim because the Court cannot discern a ground upon which trial counsel could have objected or how Delgado was prejudiced from the prosecutor's comment during jury selection.

Delgado's tenth claim is unexhausted and procedurally defaulted, and she has not demonstrated that Martinez excuses the procedural default. The claim is unexhausted because Delgado did not include it in her amended PCRA petition, neither the CCP nor the Superior Court ever had the opportunity to address it, and it was not substantively addressed during her second PCRA proceedings (which she never fully exhausted anyway). Moreover, the state court record is silent as to any missing Discord text messages, the minor victim having deleted any messages, or the Pennsylvania State Police's actions (or inactions) regarding Discord messages between Delgado and the minor victim,[18] and Delgado does not show that either statutory exception identified in Shinn applies because she does not identify a new, retroactively applicable constitutional rule or a factual predicate that she could not have previously discovered through due diligence. Therefore, there is no record upon which this Court can analyze the merits of Delgado's claim and, consequently, she cannot show that this is a substantial claim. Accordingly, Delgado fails to make a sufficient showing under Martinez to excuse the procedural default of her tenth habeas claim, and the Court will dismiss this claim.

#### 11. Claim Eleven: Trial Counsel's Failure to Retain an Expert on Police Interrogations and Interviews

Delgado contends that trial counsel was ineffective for failing to "retain an expert of [sic] interrogations and interviews in police tactics and the abuse of the interrogation process," and she asserts that she was not properly advised of her Miranda rights. See (Doc. No. 1 at 35). In support of this claim, Delgado alleges that:

> Trial counsel knew prior to the trial that I requested . . . an attorney during my interrogation and interview numerous times and the Pennsylvania State troopers never stopped their interrogation and interview[,] violating my due process rights

[18] Insofar as Delgado appears to blame the Pennsylvania State Police for failing to subpoena the allegedly missing messages, the Court has not considered this claim because it is impertinent to her ineffectiveness claim.

> and my [Miranda] rights. Trial counsel had known that I was arrested and detained in the State of South Carolina, on September 3, 2018, at Dillon County Correctional[,] where I was held in a single cell and in isolation while awaiting extradition to the Commonwealth of Pennsylvania, on September 14, 2018, I was extradited to [Pennsylvania] in unimaginable conditions. I was transported in a minimal space, 4'W x 4½'H x 3½'L, attached to another inmate for over [sixteen] hours. When I arrived at the Monroe County Correctional Facility, in Monroe County Pennsylvania, I went before a judge, was informed of the charges against me, my rights, the severity, and that I was facing "fourty [sic] years to life" in prison at that point. Then I was placed in a suicide outfit and placed in confinement for [fourteen] days and during that time I was interviewed and interrogated by the State Troopers. Trial counsel knew that I had and continue to have psychological issues from childhood trauma. Trial counsel knew that I was not mentally stable and should have retained an expert in interviews, interrogations[,] and psychology. Trial counsel did not file a motion to suppress.

See (id.). Delgado also asserts that even though her PCRA counsel included part of this claim in the amended habeas petition, the amended petition "excluded other aspects [she] believed w[ere] in [her] best interest." See (id. at 36).

As best the Court can discern, there are three components to Delgado's claim. First, she asserts that Pennsylvania State Troopers interrogated her without providing her with Miranda warnings. Second, she argues that her trial counsel was ineffective because he did not file a motion to suppress her statement to police. Third, she contends that trial counsel was ineffective for failing to retain an expert on police interrogations.

All three components of this claim are unexhausted because Delgado never presented them on direct appeal or through her appeal to the Superior Court from the denial of her first PCRA petition. The Court must now determine whether they are also procedurally defaulted.

As for Delgado's reference to a Miranda violation, this component of her eleventh claim is procedurally defaulted because she could have and never presented it on direct appeal, and Pennsylvania law precludes her from presenting it now. See 42 Pa. C.S. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to

do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."); Commonwealth v. Reyes, 870 A.2d 888, 895 (Pa. 2005) (determining that defendant waived their Miranda violation claim because they could have raised the issue on direct appeal). Additionally, Delgado has not shown that the Court should excuse this procedural default because she neither shows cause and prejudice nor a fundamental miscarriage of justice. Rather, her only possible argument relates to Martinez and the alleged ineffectiveness of her PCRA counsel, which, as already stated, is insufficient because Martinez applies to only the conduct of counsel in initial-review collateral proceedings. See 566 U.S. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." (citations omitted)).

Regarding the second component of this claim, i.e., trial counsel's failure to file a motion to suppress, PCRA counsel included it in the amended PCRA petition, see (Doc. No. 18-7 at 3), but then later withdrew the claim after the evidentiary hearing. See (Doc. Nos. 18-12 at 3 (indicating that Delgado was withdrawing her claim that trial counsel was ineffective for failing to move for suppression of her statements to law enforcement because the "testimony show[ed] this was a tactical decision by trial counsel which was not per se unreasonable"); 18-13 at 3 ("Defendant withdrew . . . her claim that pretrial statements made to police should have been suppressed in her brief."). Due to its withdrawal, the CCP never addressed it, see (Doc. No. 18-3 at 3).

This second component of Delgado's claim is procedurally defaulted unless she can show that Martinez applies. She fails to do so because it is insubstantial. In the first instance, Delgado does not show that trial counsel acted unreasonably. During the evidentiary hearing, trial counsel

testified that he filed an omnibus pretrial motion on Delgado's behalf but later withdrew it as part of a plea agreement the parties negotiated in August 2018 in which Delgado would have pleaded nolo contendere to two counts in the criminal information and received a sentence of time served to be followed by probation. See (Doc. No. 18-11 at 7–8). Although Delgado agreed to the plea, she did not sign the written guilty plea colloquy "and the plea didn't go through." See (id. at 8–11). Nevertheless, in exchange for the prosecution leaving the plea offer on the table until October 2018, Delgado agreed to withdraw the motion. See (id. at 9). Despite trial counsel meeting with her on a bi-weekly basis and discussing aspects such as her potential sentencing exposure if she goes to trial versus a plea and the rights she would give up by pleading guilty, such as not proceeding with her omnibus motion, Delgado ultimately decided to go to trial rather than enter a negotiated plea. See (id. at 9–11).

In addition, trial counsel testified during the evidentiary hearing that he did not believe that Delgado's statements to police "were harmful to her." See (id. at 11). Instead, counsel believed that "[t]hey were part of her story, and she was very adamant on telling her story." See (id.). As such, it was part of trial counsel's strategy "to allow those statements to come in." See (id.). Trial counsel further explained that he believed they could "expose" any pressure placed on her by the interrogating officers during the trial. See (id. at 12).

Based on this record, trial counsel's reasons for withdrawing the omnibus pretrial motion and allowing Delgado's statements to come in during the trial were part of a reasonable trial strategy. Although Delgado asserts that the law enforcement officers interrogating her violated her constitutional rights, there is no evidence in the record that this actually occurred, and trial counsel's testimony that he believes she might have been pressured does not equate to a constitutional violation. Furthermore, even if trial counsel's strategy was somehow

unreasonable, Delgado fails to demonstrate that she suffered any prejudice by the admission of her statements to police during the trial, and she fails to show that any motion to suppress her statements would have been successful. Therefore, Delgado has not met her burden to show that Martinez excuses her procedural default of the second component of this habeas claim.

As for the third and final component of this claim, it is also unexhausted and procedurally defaulted insofar as Delgado never raised it in her PCRA proceedings, and based on the Court's determination as to whether she presented a substantial claim of trial counsel's ineffectiveness relating to an alleged failure to file a motion to suppress, her argument that trial counsel was also ineffective for failing to retain an expert on police interrogations is also insubstantial. Delgado has not shown that trial counsel employed an unreasonable trial strategy by not retaining an expert in police tactics/interrogations or that she was prejudiced by the lack of such an expert. Accordingly, this final component of Delgado's eleventh habeas claim is also procedurally defaulted and not excused under Martinez.

**12. Claim Twelve: Trial Counsel's Failure to Object to Text Messages Withheld by the Commonwealth and Never Disclosed to the Defense**

For her twelfth habeas claim, Delgado asserts that trial counsel was ineffective by "fail[ing] to object to text messages that was [sic] withheld by the Commonwealth and never disclosed to the defense." See (Doc. No. 1 at 39). Delgado describes the facts in support of this claim as follows:

> Since the Commonwealth had not once prior to trial disclosed a complete copy of the "Discord" text messages to our trial attorneys[, t]he Commonwealth intentionally withheld them and only disclosed a select few to our trial attorneys in the course of our trial while the alleged victim was on the witness stand, other selected portions of "Discord" text messages were disclosed, the "inflammatory parts" as it was led to believe. Many parts and complete sections were still missing and was intentionally being withheld by the Commonwealth which allowed them

> to manipulate the text messages. Trial counsel never objected even though he had reasonable knowledge to [do so].

See (id.). Delgado also admits that this claim is unexhausted, and she again blames her PCRA counsel for not including the claim in her amended PCRA petition. See (id.).

As with Delgado's tenth claim in which she also references issues with her Discord messages with the minor victim, the instant claim is unexhausted and procedurally defaulted. The claim is unexhausted because Delgado did not include it in her amended PCRA petition, neither the CCP nor the Superior Court ever had the opportunity to address it, and it was not substantively addressed during her second PCRA proceedings (which she never fully exhausted anyway). Moreover, the state court record is silent regarding any claim that the Commonwealth intentionally withheld any Discord messages from her (or her trial counsel), and Delgado does not show that either statutory exception identified in Shinn applies because she does not identify a new, retroactively applicable constitutional rule or a factual predicate that she could not have previously discovered through due diligence. Therefore, there is no record upon which this Court can analyze the merits of Delgado's claim and, consequently, she cannot show that this is a substantial claim. Accordingly, Delgado fails to make a sufficient showing under Martinez to excuse the procedural default of her twelfth habeas claim, and the Court will dismiss this claim.[19]

---

[19] To the extent necessary, the Court notes that: (1) there is no evidence in the record that there were missing Discord messages or that the Commonwealth "manipulated" the Discord messages between the minor victim and Delgado, (2) the Commonwealth introduced only the "inflammatory parts" of those messages to the jury, see, e.g., (Doc. No. 18-2 at 115–16 (showing messages between the minor victim and Delgado in which the minor victim compliments her on how she deals with the other people in her Discord server), (3) it would have been improper if the Commonwealth introduced only "the inflammatory parts" of those messages, or (4) there were any grounds upon which Delgado's trial counsel could have, and should have, objected to the messages introduced during the trial.

### 13. Claim Thirteen: Trial Counsel's Failure to File an Omnibus Pretrial Motion, Bill of Particulars, or Other Motions on Delgado's Behalf

In her thirteenth habeas claim, Delgado contends that trial counsel was ineffective for failing to file an omnibus pretrial motion, bill of particulars, or challenges under Brady v. Maryland, 373 U.S. 83 (1963), Mapp v. Ohio, 367 U.S. 643 (1961), or "Randull." See (Doc. No. 1 at 42). She asserts that although "[t]rial counsel had knowledge that there were many errors involved in [my] case and in trial," he "never took any action, beyond the initial motions, to file any of the other pretrial motions." See (id.). She further asserts that this claim is unexhausted, and she believes PCRA counsel should have included in the claim in her amended PCRA petition. See (id.).

As to this claim, the Court has already addressed Delgado's claim that trial counsel failed to file a motion to suppress her statements to police, so the Court will not do so again here. In addition, the Court cannot discern what case Delgado is referring to when she complains that trial counsel failed to file a motion based on "Randull"; thus, the Court has not addressed this part of her claim either.

Regarding the remainder of this claim, it is unexhausted and procedurally defaulted. The claim is unexhausted because Delgado did not include it in her amended PCRA petition, neither the CCP nor the Superior Court ever had the opportunity to address it, and it was not substantively addressed during her second PCRA proceedings (which she never fully exhausted anyway). Moreover, the state court record is silent regarding trial counsel's alleged ineffectiveness for failing to file a motion or a bill of particulars, a Brady motion, a motion to suppress based on Mapp, or any other possible type of pretrial motion not already discussed in

this Memorandum. Delgado also does not show that either statutory exception identified in Shinn applies because she does not identify a new, retroactively applicable constitutional rule or a factual predicate that she could not have previously discovered through due diligence. Therefore, there is no record upon which this Court can analyze the merits of Delgado's claim and, consequently, she cannot show that this is a substantial claim. Accordingly, Delgado fails to make a sufficient showing under Martinez to excuse the procedural default of the remainder of her thirteenth habeas claim, and the Court will dismiss this claim.

#### 14. Claim Fourteen: Trial Counsel's Failure to Address the Unlawful Multiplication of Conspiracy Offenses Despite There Being Only a Single Course of Conduct Consisting of Multiple Offenses

For her fourteenth habeas claim, Delgado asserts that her trial counsel was ineffective because he did not challenge the "unfair, prejudicial, and legally unwarranted multiplication of conspiracy offenses for what was a single course of conduct consisting of multiple offenses." See (Doc. No. 1 at 45). In support of this claim, Delgado states as follows:

> I was convicted of five . . . conspiracy offenses and was sentenced on all five . . .[,] which violates the law. The court sentenced me on one . . . count of conspiracy to run consecutive and then sentenced me on the remaining four . . . conspiracy offenses to run concurrently with other charges, violating my due process rights. The remaining four . . . conspiracy charges should have been dismissed. All five . . . conspiracy charges/offenses reflect on my sentencing order and on my incarceration. The prosecution's theory was that we engaged in a course of conduct first initiated over the internet and then culminating in a trip to pick up the young man and take him to South Carolina for purposes of sexual activity. The prejudice that flows to me from my trial counsel allowing this pervaded the trial itself. To fail to prevent this serves no reasonable tactical or strategical purpose. This is not a harmless error, that I was only sentenced consecutively on one . . . conspiracy charge and sentenced on four . . . conspiracy charges concurrently. If there were only one . . . conspiracy charge, instead of five . . . separate conspiracy charges pertaining to one course of conduct, it may have resulted in no consecutive sentencing because the impact of the jurys [sic] verdict would have been substantially lessened.

See (id.). Regarding exhaustion of this claim, Delgado admits that PCRA counsel "included this ground, in part[,]" in her amended PCRA petition, but she asserts that the amended petition "excluded other aspects that [she] believed w[ere] in [her] best interest to include[,] and he refused to take it further than the Superior Court even though [she] expressed that [she] wanted [him] to [do so]." See (id. at 46).

Delgado is not entitled to habeas relief on this claim. This is an exhausted claim insofar as PCRA counsel raised it in Delgado's amended PCRA petition, see (Doc. No. 18-7 at 3), the CCP denied the claim, see (Doc. No. 18-13 at 6), and the Superior Court addressed it on appeal. See Delgado, 2023 WL 2706704, at *2. The CCP denied Delgado's ineffectiveness claim, explaining as follows:

> Delgado objects that [trial counsel] failed to object to her charges and accompanying sentence as an unwarranted multiplication of a single conspiracy. In order to obtain relief based on ineffective assistance of counsel, a PCRA petition [sic] must demonstrate that he or she was prejudiced by counsel's action or inaction. Commonwealth v. G.Y., 63 A.3d 259, 265 (Pa. Super. 2013). A review of the June 19, 2020 sentencing order reveals that all of . . . Delgado's conspiracy charges were run concurrently with the sentence imposed in Count I – Kidnapping to Facilitate a Felony. . . . Delgado received no additional punishment for being found guilty of multiple conspiracy charges. Further, the evidence submitted at trial would have been admissible to substantiate [Delgado and Paduani's] multiple criminal objectives even if . . . Delgado had been charged with one general count of conspiracy with multiple objectives[.] Thus, . . . Delgado cannot show prejudice as to the admission of evidence substantiating the conspiracy or as to the sentence imposed for the same.

See (Doc. No. 18-13 at 6).

As for the Superior Court, although it rejected Delgado's ineffectiveness claim, it concluded that the CCP imposed an illegal sentence and vacated the sentences for four of the five conspiracy convictions:

> Delgado argues that she was prejudiced by being prosecuted for five separate counts of criminal conspiracy. She argues without support that this prejudice pervaded the

> trial, and that trial counsel had no reasonable basis for letting the jury decide all five counts.
>
> The PCRA court reasons that all five conspiracy counts were necessary to determine the grading of the offense, which depends on the underlying crime. It concludes that Delgado did not suffer prejudice at sentencing because the sentences for the multiple conspiracy counts ran concurrently to other counts.
>
> We conclude that the PCRA court did not err in denying Delgado's motion for a new trial on this basis. We agree with the PCRA court that the grading of the offense of conspiracy depends on the underlying offense, the object of the conspiratorial agreement. We reject Delgado's assertion that the mere presence of multiple counts on a verdict sheet is inherently prejudicial.
>
> However, we find that Delgado's sentence is illegal because she received multiple sentences for offenses that should have merged for sentencing purposes. It is undisputed that there was one overarching conspiratorial agreement in this case. See Commonwealth v. Davis, 704 A.2d 650, 654 (Pa. Super. 1997) (listing factors to consider for whether there is one conspiracy). Once the jury had returned a verdict and the sentencing court could calculate the grading of the conspiracy offense, it should have imposed sentence for only one conspiracy. The concurrent nature of the sentences does not render the sentence legal. Commonwealth v. Wolfe, 289 A.2d 153, 155–56 (Pa. Super. 1972). Because the removal of the sentences for the additional counts of conspiracy does not upset the overall sentencing scheme, we will simply vacate the illegal sentences. Commonwealth v. Thur, 906 A.2d 552, 570 (Pa. Super. 2006).

See Delgado, 2023 WL 2706704, at *2.

Based on the Superior Court's decision, Delgado's current claim is moot insofar as she complains about trial counsel not acting to address the CCP sentencing her on all five conspiracy convictions. To the extent that Delgado asserts that trial counsel was ineffective for failing to object to the five conspiracy charges in any other respect, she has not satisfied her burden to show that the state courts' determination were (1) contrary to or involved an unreasonable application of Strickland or (2) "based upon an unreasonable determination of the facts in light of the evidence presented" in her PCRA proceedings. See 28 U.S.C. § 2254(d)(1)–(2). She does not argue or attempt to show that the state courts unreasonably determined the facts in light of the evidence presented in her PCRA proceedings or rebut any factual findings by clear and

convincing evidence. See id. § 2254(e)(1). She also fails to demonstrate that the state courts' determinations decision were "contrary to" Strickland or that they unreasonably applied Strickland. Concerning this latter failure, her arguments that she somehow suffered prejudice through the inclusion of the five conspiracy charges (instead of one general conspiracy charge) are conclusory and wholly undeveloped. On the other hand, the state courts reasonably determined that she failed to show any prejudice via being prosecuted on all five conspiracy charges. See (Doc. No. 18-13 at 6); Delgado, 2023 WL 2706704, at *2. Therefore, the Court will deny Delgado's fourteenth habeas claim as moot in part and meritless in part.

### 15. Claims Fifteen and Sixteen: Trial Counsel's Failure to Correct Known Incorrect Dates on the Docket and Court Records and Failure to File a Speedy Trial Motion to Dismiss All Charges Under Pennsylvania Rule of Criminal Procedure 600

In her fifteenth and sixteenth habeas claims, Delgado contends that her trial counsel was ineffective for failing to (1) "correct known incorrect dates that were, prior to trial, made in error on [her] criminal docket and court records that would have changed the computation of time and its remedies pursuant to [Pennsylvania Rule of Criminal Procedure] 600 (A), (C), and (D)" and (2) file a motion to dismiss all charges under Rule 600(D)(1). See (Doc. No. 1 at 49, 55). In support of this claim, Delgado cites to the provisions of Rule 600 and alleges as follows:

> There were errors for the dates of November 1, 2019[,] and December 1, 2019. [Trial counsel] . . . failed to correct known dates that were incorrect as the defense did not request for a continuance. On the date of November 1, 2019, the Commonwealth requested for a continuance from the court because they could not locate nor make contact with the family of the alleged victim nor with the alleged victim himself. [Trial counsel] failed to correct known dates that were incorrect where, once again, the defense did not request a continuance. On the date of December 2, 2019, the Commonwealth requested a continuance from the court because, once again, the Commonwealth could not locate or make contact with the family of the alleged victim nor with the alleged victim himself. This would be a total of seventy-three . . . days in favor of the defense, from (11/1/2019 to 1/13/2019 [sic]), that should have been applied to [me], per Rule 600(D).

> . . . From the date of my arrest, September 3, 2018, to the date of trial, January 14, 2020, is four-hundred and ninety-eight . . . days. The calculations are as follows: I was arrested on September 3, 2018. To the date of January 10, 2019 is one-hundred and twenty-nine . . . days that is attributed to the Commonwealth/Courts. On the date of January 10, 2019, the defense filed an "Application for Incompetency Evaluation." On the date of January 14, 2019, the court ordered "Competency to Stand Trial," [w]hich was four . . . days that is attributed to the [d]efense. On the date of January 14, 2019[,] the defense filed an Omnibus Pretrial Motion – Habeas Corpus Relief and the Motion in Limine [sic]. Then on the date of January 18, 2019[,] the court ordered an Omnibus Hearing to be on the date of May 20, 2019,[,] which was four . . . days that is attributed to the [d]efense. Then from the date of January 19, 2019, to the date of May 13, 2019 is one-hundred and fifteen . . . days that is attributed to the [d]efense. On the date of May 13, 2019, the Commonwealth requested a continuance to the date of August 5, 2019, [w]hich was eighty-four . . . days that is attributed to the Commonwealth/Courts. Form the date of August 5, 2019[,] to December 11, 2019, the defence [sic] did not request any continuances from the Court. The Commonwealth made the requests to continue. This is one-hundred and twenty-eight . . . days that is attributed to the Commonwealth/Courts. On the date of December 11, 2019[,] the defense filed a "Petition for Nominal Bail [P]ursuant to Pa. R. Crim. P. . . . 600(B)." Then[,] on the date of December 11, 2019[,] the court ordered a hearing to be on the date of December 16, 2019[, w]hich was five . . . days that is attributed to the [d]efense. Form the date of December 16, 2019[,] to January 13, 2020[,] the defense did not request any continuances from the Court. The Commonwealth made the request to continue. This twenty-eight days that is attributed to [the] Commonwealth/Courts. The Commonwealth requested a continuance on November 1, 2019[,] and on December 2, 2019[,] to locate the family and the alleged victim. Here are the totals: The Commonwealth: 129 + 84 + 128 + 28 = 369 days. The [d]efense: 4 + 4 + 115 + 5 = 128 days. The total days 128 + 369 = 497 days.

See (id. at 50–52 (emphasis omitted)).[20] Additionally, as with most of her claims in her habeas petition, Delgado acknowledges that she failed to exhaust these claims and once again blames PCRA counsel for this failure. See (id. at 52, 55).

The Court concludes that these two claims are unexhausted and procedurally defaulted. The claims are unexhausted because Delgado did not include them in her amended PCRA

[20] In her petition, Delgado again improperly asserts arguments on behalf of Paduani and against Paduani's trial counsel. The Court has not referenced those arguments here and will not address them.

petition, neither the CCP nor the Superior Court ever had the opportunity to address them, and they were not substantively addressed during her second PCRA proceedings (which she never fully exhausted anyway). Moreover, the state court record is silent regarding trial counsel's alleged ineffectiveness for failing to file a motion to correct the dates in the docket/court record or file a Rule 600 motion to dismiss.[21] Delgado also does not show that either statutory exception identified in Shinn applies because she does not identify a new, retroactively applicable constitutional rule or a factual predicate that she could not have previously discovered through due diligence. Therefore, there is no record upon which this Court can analyze the merits of Delgado's claim and, consequently, she cannot show that her two ineffectiveness claims are substantial. Accordingly, Delgado fails to make a sufficient showing under Martinez to excuse the procedural default of fifteenth and sixteenth habeas claims, and the Court will dismiss these claims.

#### 16. Claim Seventeen: Trial Counsel's Failure to Withdraw and File a Motion to Have the Prosecutor and Paduani's Counsel Withdraw

[21] The Court recognizes that the docket shows dates for specific events in the case; however, reviewing only the docket does not allow for a complete Rule 600 analysis due to the different considerations that courts must consider when conducting the speedy trial computation under this Rule. See, e.g., Commonwealth v. Barbour, 189 A.3d 944, 947 (Pa. 2018) ("When considering a Rule 600 motion, the court must identify each period of delay and attribute it to the responsible party, then adjust the 365-day tally to arrive at the latest date upon which the Commonwealth may try the defendant . . . ."); Commonwealth v. Wallace, 804 A.2d 675, 679 (Pa. Super. Ct. 2002) (explaining that the pendency of a defendant's pretrial motion does not automatically result in the exclusion of time for Rule 600 purposes; rather, the time period is excluded only where the pretrial motion causes a delay in the commencement of the trial and "the Commonwealth . . . demonstrate[s], by a preponderance of the evidence, that it exercised due diligence in opposing or responding to the pretrial motion"); Commonwealth v. Martz, 232 A.3d 801, 810–11 (Pa. Super. Ct. 2020) (indicating that analyzing whether the Commonwealth has exercised due diligence "is a fact-specific concept that must be determined on a case-by-case basis").

For her final habeas claim, Delgado argues that her trial counsel was ineffective for failing to withdraw from her case due to "prejudice and conflict of counsel" and "failed to file a motion to request for the withdrawal of [the prosecutor] and [Paduani's trial counsel] . . . due to prejudice and [a] conflict of interest in this case." See (Doc. No. 1 at 58). Delgado identifies the facts in support of her claim as follows:

> Trial counsel was aware that [Delgado and Paduani] filed several complaints with the Disciplinary Board of the Supreme Court of Pennsylvania. One on October 15, 2019[,] followed by one on February 28, 2020. By us having filed the complaints, it caused prejudice, malice, vindictiveness and bias for [trial counsel] . . . to work in collusion with the Assistant District Attorney allowing [her] to be prosecuted with false information, inflammatory remarks and false statements by doing nothing to defend [me] in this case. Trial counsel failed to not only withdraw himself from my case but also failed to file a motion to withdraw against the [ADA]. This prejudice flowed to the jury by the lack of defense, the false information, the inflammatory remarks and the false statements made to the jury by the Commonwealth to prosecute me for "Criminal Attempt – Statutory Sexual Assault" as there were no statements, evidence and no attempt that was ever alleged at any time by the alleged victim that anything ever occurred within the Commonwealth of Pennsylvania. The same applies to the kidnapping offense and any of the other criminal offenses[. T]here was no evidence or any allegations or statements by the alleged victim but the jury was encouraged and influenced by the [ADA]. The lies, false statements and information, and vindictiveness of the [ADA] made the jury prejudicial. This and the intentional lack of defense is why [I was] prosecuted.
>
> . . . All previous factors considered along with [my] attempts to diligently pursue [my] rights., including attempting to file specific complaints against each legal official involved in [my] case, amongst other documents on [my] own behalf, should be considered in their totality. I request that due consideration be given to the fact that prosecutorial misconduct may have overshadowed the duties of the jury.

See (Doc. No. 1 at 58–59).[22] Delgado acknowledges that she failed to exhaust this claim but yet again places blame on PCRA counsel for this failure. See (id. at 59).

[22] Delgado once again improperly asserts arguments on behalf of Paduani and against Paduani's trial counsel as part of this claim. The Court has not referenced those arguments here and will not address them in this Memorandum for reasons already stated.

The Court concludes that this final claim is unexhausted and procedurally defaulted. The claim is unexhausted because Delgado did not include it in her amended PCRA petition, neither the CCP nor the Superior Court ever had the opportunity to address it, and it was not substantively addressed during her second PCRA proceedings (which she never fully exhausted anyway). Moreover, the state court record is silent regarding any of the alleged facts Delgado references in her petition except for the docket reflecting that something was filed with the Disciplinary Board. See CCP Dkt.[23] Delgado also does not show that either statutory exception identified in Shinn applies because she does not identify a new, retroactively applicable constitutional rule or a factual predicate that she could not have previously discovered through due diligence. Therefore, there is no record upon which this Court can analyze the merits of Delgado's final claim and, consequently, she cannot show that this ineffectiveness claim is substantial. Accordingly, Delgado fails to make a sufficient showing under Martinez to excuse the procedural default of her seventeenth and final habeas claim, and the Court will dismiss the claim.

### C. Certificate of Appealability

"Unless a circuit justice or judge issues a certificate of appealability [("COA")], an appeal may not be taken to the court of appeals from . . . the final order in a habeas proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. See id. § 2253(c)(2). When deciding whether to issue a COA

[23] The mere fact that Delgado filed a complaint with the Disciplinary Board about the prosecutor could not have served as a ground for her trial counsel to file a motion seeking to have the prosecutor removed from the case. If it did, any criminal defendant desiring to get rid of the prosecutor in their case could simply file a complaint about said prosecutor with the Disciplinary Board.

after a denying a Section 2254 petition on the merits, the Court applies the following standard: "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

In this case, jurists of reason would not find the disposition of this case debatable, i.e., that Delgado's claims do not warrant habeas relief because they are either meritless or unexhausted and procedurally defaulted. Accordingly, the Court will not issue a COA in this case.

## IV. CONCLUSION

For the reasons stated above, the Court will dismiss in part and deny in part Delgado's Section 2254 habeas petition, decline to issue a certificate of appealability, and direct the Clerk of Court to close this case. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania